RITTE
*vs.*
COMMONWEALTH

---

## Ritte *vs.* Commonwealth.

### APPEAL FROM CAMPBELL CIRCUIT.

Case 8.  18bm  35
         118  627
         18bm  35
         f127  853

1. An instruction to a jury, on the trial of a penal case, although it very closely pursues the language of the statute, may be erroneous. It should be so explicit, and have such connection with the facts of the case, as to enable the jury clearly to apply the facts to the law as expounded by the instruction, and meet the evil intended to be remedied.

2. The object of the Legislature, in passing the act against the setting up of gaming tables, (*Rev.Stat.* 368, *sec.* 6,) was to suppress that species of gambling carried on by banking games, such as faro, roulette, and other games where there is a fund of money ready to be staked on all bets that others may choose to make against the banker. It was not intended to embrace backgammon, chess, or draft boards, or dominos, kept for mere amusement, and not as instruments for gambling.

[The facts of the case are set forth in the opinion of the court.—REP.]

RITTE
vs.
COMMONWEALTH

*J. W. Stevenson*, for appellant—

The words of the statute under which this proceeding was instituted, not less than the heavy penalties denounced, show that it was against *banking games*— a contrivance or machine constructed for the purpose of *gaming*, in contradistinction to mere games of amusement. A faro bank, roulette, or other contrivance or machine for gaming, is that which the statute intended to reach;—not chess boards, backgammon boards, or baggatelle tables, made and used merely for amusement, though money may be won and lost by betting upon them. The object and *quo animo* of the construction and its use must be the distinguishing characteristic.

If the game is one of amusement, then it is one of the latter class; if for gaming, then of the former class.

Whether it was the province of the court or jury to say to which class the baggatelle belonged, the judgment should be reversed; because the court refused to submit the fact to the jury, under what is regarded an erroneous construction of the statute.

The object of the legislature was to put down gambling machines, constructed and used as gambling machines; not such as were made and used solely for purposes of amusement, and the heavy penalty is demonstrative of this conclusion.

*Root & Webster*, on the same side—

The denunciations of the statute is against banks and machines constructed for and used for gambling purposes, and not against such as are constructed and used merely for purposes of amusement, as chess, back-gammon boards, &c.

The heavy penalty denounced by the statute clearly shows that it was the great evil of gaming tables, faro banks, &c., which was intended to be suppressed, and not the innocent amusements of chess, &c., which are in no way demoralizing and detrimental to society.

The appellant, nor any one else, ever thought he RITTE
was gaming while amusing himself at this German *vs.*
amusement called *baggatelle*.                   COMMONWEALTH

The court should have given a construction to the
statute which would have enabled the jury to have
taken the proper distinction between the baggatelle
and the *faro bank*, or a gaming table constructed for
and used as a gaming table, and a machine con-
structed *and used* for a like purpose of gaming.

This view of the subject is confirmed by reference
to the 6th section of the act which provides for the
seizing and burning all such tables, &c., and money
staked.

The instruction of the court was wrong in this, that
it did not tell the jury that they should believe that
the table was set up before the finding of the indict-
ment, but "about the time stated in the indictment."

*J. Harlan,* Attorney General, for Commonwealth—

Ritte was indicted for setting up a table, upon
which money and other things could and were bet,
won, and lost. The table was about twelve feet long,
and four feet wide, with holes at each end, and sticks
were used to drive balls into the holes. It was doubt-
less intended to elude the penalty of the law for set-
ting up a billiard table. It was called a "baggatelle
table." A trial was had, and a verdict and judg-
ment rendered for $500, and the defendant has ap-
pealed to this court.

The evidence of one of the witnesses was, he
played upon the table with another person, and the
stake was who should pay for the beer the parties
intended to purchase from the owner and setter up
of the table, who kept a drinking shop under the
name of a "coffee house." The witness won the
stake but the looser had not the money to pay for the
beer, and the defendant let them have it on credit.

The statutes against gaming should receive a lib-
eral construction to check the pernicious practice.
The table was set up to induce persons to frequent

the coffee house of the defendant, and be initiated in the habits of idleness, dissipation, and gaming, and comes within the letter and spirit of the statutes passed to suppress gambling. The table was owned by the defendant, and kept in his coffee house. His witness says it was set up and used for *amusement.* That may be, but it may nevertheless be a gaming table. All games were invented for amusement and pastime, and the practice of betting is intended to add to the interest of the game.

The name given to the table is immaterial. The policy of the law can't be frustrated or defeated by mere names, or giving a new name to an old thing. The extent of the betting, or the value of the stakes, cannot change the responsibility of the defendant. He may have intended that the betting should be confined to a mug of beer at each game, but the betters could, if they obtained possession of the table, increase the amount of the bettings, or convert them into money. In any point of view, the table must be regarded as a gaming table, set up by the defendant in violation of law, and he is responsible accordingly.

The *Revised Statutes,* 368, *section* 6, uses the words "faro bank, gaming table, machine, or *contrivance used in betting.*" Now, for what purpose was this table constructed, and why was it placed in the defendants coffee house? The answer must be, it was constructed and placed in the defendants house that his customers might amuse themselves by ascertaining who of the persons present should pay for the beer or other refreshments, which was to be drank from time to time. The times "between the drinks" could be pleasantly spent by games on the "baggatelle." The excitement of the game would necessarily increase the appetite for more liquor.

June 3, 1857.     Judge STITES, delivered the opinion of the court.

The appellant was indicted for an alledged violation of the following provision of the Revised Stat-

utes, (368:) "Whoever shall set up, exhibit, or keep for himself or another, or shall procure to be set up, exhibited, or kept, any faro bank, gaming table, machine, or contrivance *used* in betting, or other game of chance, whereby money or other thing is or *may be* won or lost, shall be fined five hundred dollars and costs, and imprisoned till the same are paid, or imprisoned not more than one year, or both so fined and imprisoned; shall be deemed infamous after conviction, and be forever thereafter disqualified from exercising the right of suffrage, and from holding any office of honor trust or profit."

Upon the trial below he was convicted, and adjudged to pay a fine of five hundred dollars, and remain in jail until payment was made, &c.; and from that judgment he has appealed.

It appeared from the evidence that the appellant was a German, and the keeper of a coffee house or saloon in Newport, in which he sold beer, cigars, &c., and that he kept in the front room of his shop, and open to public view, what was called a *baggatelle* table. This table is described by the witnesses as being about twelve feet long, and four wide, with holes in one end, and used for a game called baggatelle, played by driving balls with sticks from one end of the table into the holes at the other.

It seems that visitors to the saloon, or shop, were in the habit of playing the game publicly, and for beer and cigars, but there was no proof of any money or other thing having been bet.

There was evidence conducing to show that the house was a German coffee house, and also that the game of baggatelle was an amusement common among Germans, similar to dominos, drafts, and chess, and was resorted to not for gambling for profit or money, but for amusement only.

Upon this state of facts the circuit court gave the following instruction, which was objected to by appellant, "It is a question for the jury to determine ' whether the table described by the witnesses is a

' machine or contrivance used in betting, or other ' game of chance. If they find that said table is ' made and used for that purpose, and that said table ' was so set up or kept by the defendant in this ' county, at or about the time as stated in the indict- ' ment, then they will find the defendant guilty as ' charged, and fix his punishment by a fine of $500, ' and cost and imprisonment, till the same are paid, ' or imprisoned not more than one year, or both so ' fined and imprisoned."

The instruction pursues almost literally the words of the act, but fails, in our opinion, to furnish such an exposition of the meaning and intent of the law as was demanded by the peculiar circumstances and facts before the jury, and in that was misleading and erroneous.

**1. An instruction to a jury, in the trial of a penal case, although it very closely pursues the language of the statute, may be erroneous. It should be so explicit, and have such connection with the facts of the case, as to enable the jury clearly to apply the facts to the law as expounded by the instruction, and meet the evil intended to be remedied.**

It is obvious, we think, from the language of the section, and the severe punishment denounced against any violation thereof, that the object of the legislature was to suppress that species of gambling carried on by banking games, such as *faro, roulette,* and other games, where there is a fund of money offered and ready to be staked on all bets others may choose to make against the banker, on the game which he shall exhibit to entice bets. This is the character of gaming table, machine, and contrivance mentioned and intended to be embraced by the section in question, and those who are guilty of keeping or setting up such tables, machines, or contrivances, are those intended to be rendered *infamous, and disqualified from voting and holding office.*

To convict, under this section, it should appear that the table, machine, or contrivance, was such as is *ordinarily* used for gambling for money or property.

**2. The object of the Legislature, in passing the act against the setting up of gaming tables, (Rev.**

A literal construction of the law would bring within its purview all species of games for pastime and amusement, and subject to punishment and infamy every one who should unfortunately have permitted a back-gammon, chess or draft board, or a set

of dominos, to occupy a place upon his parlor table, or in his house, although neither he nor his visiters may have ever wagered a cent upon such games. They are machines or contrivances *"used"* for games, whereby money "may be won or lost," and come within the *letter* of the law, but we cannot believe they were intended to be embraced. They are certainly not within the intent of the section, when fairly construed with the other sections of the chapter.

If therefore tables, such as were described by the witnesses, were used *ordinarily* for gambling purposes, and not for amusement only, and such a table was kept in appellants house, as charged in the indictment, then he was liable to the punishment denounced by the section, *supra*, but not otherwise, and the instruction should have been so. modified as to have submitted the question of the *ordinary use* of such table to the jury.

For any gambling or betting that may have been carried on in defendant's house, with his knowledge or permission, on such table, although it may have been ordinarily used for amusemement, he would be liable under the 10th *section* of the same chapter, for permitting gaming in his house.

Judgment *reversed*, and cause remanded for a new trial, and other proceedings in conformity with this opinion.

*Stat.* 368, *sec.*6,) was to suppress that species of gambling carried on by banking games, such as faro, roulette, and other games where there is a fund of money ready to be staked on all ibets that others may choose to make against the banker. It was not intended to embrace backgammon, chess, or draft boards, or dominoes, kept for mere amusement, and not as instruments for gambling.