CHIEF JUSTICE LINDSAY
delivered the opinion oe the court.
It is averred in the indictment that “the said Henry Miller on the 1st day of December, 1875, in the county aforesaid, and at divers times between that date and the 1st day of November immediately preceding, unlawfully promoted and aided in promoting the disposal of money and other things of value by way of lottery, in that he did, upon said date and 'during the time aforesaid, induce others for valuable considerations to take chances in the drawings and pretended drawings of a certain lottery called the Kentucky State Lottery, upon the issue of which drawings money and other things of value were disposed of and promised to be disposed of, against the peace and dignity of the Commonwealth of Kentucky.”
Section 1, article 23, chapter 29 of the General Statutes, provides, that “Whoever shall set up, draw, manage, or otherwise promote any lottery for money or other thing, or dispose of, or promote the disposing of, any money or thing of value by way of lottery, or aid in committing either of said offenses, shall be fined from five hundred to ten thousand dollars.”
*736 Section 2 provides, that citizen artists may dispose of paintings, the entire creations of their own pencils, or which may have been finished by them, in shares; and for any violation of this section the offender is liable to the same penalty men-' tioned in the preceding section.
Section 3 provides, that “Whoever shall write, print, vend, or have in possession, with intent, for himself or another, to sell, or offer to sell, negotiate, exchange, or dispose of any ticket, . . . shall be fined for every such offense from one hundred to one thousand dollars.”
Section 4 enacts, that “ Whoever shall knowingly permit, in any house, shop, or other building, occupied or controlled by him,, the setting up, managing, or drawing of any lottery or the sale or exchange of any lottery ticket or other thing mentioned in the preceding section, shall incur a like penalty as therein named.”
Section 5 enacts, that “Whoever shall advertise or give public notice of any lottery ticket, or other thing, mentioned in the last two sections, being for sale or exchange, . , . shall incur the like penalty as in those sections named.” (See Gen. Stat. 352.)
It is objected, that the indictment charges two separate and distinct offenses. The one the promotion of a lot-8 tery, and the other the aiding in such promotion. We regard these acts as but different modes of committing or participating in the commission of the same offense. The latter is but a degree of the former, and under an indictment for the major offense, a conviction might be had for the minor, according to the provisions of section 262, Criminal Code of Practice. Hence there was no misjoinder of offenses.
It is further objected, that there is no sufficient specification of the acts or methods by which the appellant promoted or aided in the promotion of the lottery. The averment is, that he did, during a certain period of time, “induce others, for *737 a valuable consideration, to take chances in the drawings and pretended drawings of a certain lottery called the Kentucky State Lottery,” etc.
To induce persons to become the patrons of an established lottery or scheme is certainly to promote the lottery by the advancement of its interests and business. Unless chances or tickets are taken or bought the lottery can not be carried on, and whoever induces the taking of such chances and the purchasing of such tickets must be regarded as directly promoting the illegal adventure. It was not necessary to specify the particular acts done, or methods resorted to, to induce persons to take chances or to purchase tickets. The specific and material fact to be proved is, that he did “induce” others to take, buy, etc.; the particular acts or modes of inducement are circumstances or facts which constitute the evidence of the principal or material fact, and they need not be set out in the indictment..
Other grounds of objection to the sufficiency of the indictment will be hereafter considered in connection with questions raised as to the propriety of the action of the circuit court in giving and refusing instructions on the trial of the prosecution.
The Commonwealth proved that Miller, the appellant, kept a place of business in the city of Lexington; that it was known as a lottery office, and that he kept over his door the sign, “Kentucky State Lottery;” that he was engaged in selling tickets and paying prizes in said lottery; that he had large advertisements and posters displayed in his windows, and about his room setting out the various schemes, and that he, in person, frequently explained the nature of the schemes and tickets, and assured persons who frequented his office that the drawings were all fair and right, and that if they drew prizes they were certain to be paid. The witnesses were generally unable to state certainly whether these acts were *738 done, and this business carried on during the time covered by the indictment; that is, during the time intervening between the 1st day of November and the 1st day of December, 1875. Each witness was asked, in substance, this question: “Will you state, then, if the business, as described by you, was continuously or uninterruptedly conducted by defendant previous to the finding of the indictment, and for how long?” In each instance it was answered that it was continuously and uninterruptedly carried on during several years preceding the date fixed in the charge.
These questions and answers were objected to by appellant, but his objections were overruled.
The evidence was admissible. From the facts stated the jury might legitimately conclude that the illegal business was carried on during the month of November, 1875. To reject testimony of this character would, in many instances, put it out of the power of litigants to fix a date or period of time, and the weight to which such evidence is entitled is a question for the jury, rather than for the court, to determine.
The court instructed the jurors that if they “should believe beyond a reasonable doubt that during the month of November, 1875, drawings were made by the Kentucky State Lottery, or by any person or persons managing or controlling a scheme or schemes under that name for the distribution of prizes or money, by chance, and that by said drawings certain of the ticket-holders, determined by lot or chance, became entitled to certain prizes or sums of money, and that the defendant, Henry Miller, during said month of November, 1875, was interested in the management or control of said lottery, or was the agent of those who were managing or controlling it, and in either of these capacities, in this county, represented the interests of said enterprise, and induced persons to purchase tickets in said drawings, they should find him guilty, and fix his punishment at' a fine of from $500 to *739 $10,000;” and refused to instruct them that, if they believed “ the defendant was only engaged in selling lottery tickets, to be determined by the drawings of the Kentucky State Lottery, and did not otherwise promote or aid in promoting the disposal of money or other thing of value by way of lottery, they ought to find him not guilty.”
The refusal to give this instruction was certainly proper, if, in all other regards, the rulings of the court were in accordance with the law of the case. There was an abundance of proof showing that the defendant did otherwise promote the lottery, and the court had no right to intimate a contrary opinion by selecting out of all the evidence an isolated fact as constituting the controlling element of the case. If it was proper to allow the Commonwealth to prove that appellant did sell lottery tickets, then the jurors had the right to consider those sales in connection with the other circumstances in proof in making up their verdict.
There is much plausibility in the argument that, because printing, vending, or having in possession with intent to vend, lottery tickets, or knowingly permitting, in any house, shop, or other building, the setting up, managing, or drawing of a lottery, or the sale or exchange of lottery tickets, and the advertising of lotteries or tickets, are each made separate offenses by statute, and a specific punishment denounced against each, that none of these acts go to make up, or are provable under the more general charge of promoting a lottery. But if this conclusion be correct it will be difficult, if not impossible, to imagine in what manner a lottery can be promoted. A person who commits each and all of these acts may not be said to set up, draw, or manage a lottery, but he, most assuredly, in the language of the statute, does “otherwise promote the disposing of money or other thing of value by way of lottery.”
The legislature did not intend, by providing for the pun *740 ishment of each specific act, that they should not be included in and constitute parts of the higher offense of promoting a lottery. The intention was that persons guilty of one or more of these acts, not fairly amounting to the offense of promotion, should nevertheless be punished for such minor breaches of the penal laws. Hence the conviction under this indictment can be pleaded in bar of a prosecution for each and all those specific acts committed during the month preceding the 1st of December, 1875. We conclude therefore that the court below did not err either in refusing to give this instruction or in permitting evidence of sales of lottery tickets by the appellant to go to the jury.
The instruction given is not liable to objection by the appellant. He could not have been prejudiced by having the jurors told, that they must believe that he was interested in the management or control of the lottery, or was the agent of those who did manage and control it, and that, in one or the other of these capacities he induced persons to purchase tickets, before he could be found guilty. The charge is, that for a valuable consideration he induced others, etc. Now whether he received this compensation as manager or agent is not material; and the evidence was sufficient to authorize the jury to believe he was in some way interested in or connected with the lottery.
It is suggested, upon a petition for rehearing, that the Kentucky State Lottery has the lawful right to raise money by way of lottery, and that the courts will take judicial notice of the acts of the legislature under and in virtue of which it was operated. But according to the doctrines of the recent cases of Commonwealth v. Bull (13 Bush, 656) and Commonwealth v. Bierman (13 Bush, 345) this question can not properly be considered on demurrer, as the courts can not determine, except from a full presentation of the facts, whether or not the alleged grants had been exhausted.
Upon the trial the appellant offered no evidence on that *741 subject, and the question was not presented to the jury or the court in any shape whatever. Applying to this case the principles of the two cases just referred to, appellant can not have relief on this ground.
After a thorough investigation of this case we have reached the conclusion that the indictment is sufficient in law, and that no error occurred on the trial in the court below.
The judgment must therefore be affirmed.