## Ruh v. Commonwealth.

(Decided January 13. 1911.)

### Appeal from Kenton Circuit Court
### (C. C. L. & E. Division).

1. Suffering Gaming—Question for Jury.—Where it appears, upon the trial of the husband for suffering gaming on premises in his occupation or under his control, that the wife owned the property, consisting of three adjoining stores, and the husband occu-

pied one as a saloon and rented out the other two; collected the rent as his own and took out a landlord's distress warrant in his own name; furnished drinks to the players in the adjoining store room and accepted their poker chips at his bar, as money, and was frequently in the adjoining store room while gambling was going on there, the trial court properly overruled a motion to instruct the jury to find the defendant not guilty, and submitted to the jury the question of his occupation or control of the premises.

2. Evidence—Subsequent Acts.—Upon the trial of appellant for suffering gambling on premises in his occupation or under his control, subsequent acts of control over the premises in question may be shown, there having been no change of ownership or control in the meantime.

3. Same—Knowledge of Owner of Premises.—"Suffering games of cards to be played at which money or property was won or lost," means the allowing or permitting games of cards to be played with the knowledge that money or property was or is to be won or lost thereon.

A. E. STRICKLETT for appellant.

JAMES BREATHITT, Attorney General, T. B. BLAKEY, Assistant Attorney General, CHAS. H. MORRIS and R. G. WILLIAMS for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

The appellant, Joseph L. Ruh, was indicted, tried and convicted for the offense of suffering and permitting a game of poker to be played in a house in his occupation and under his control. The indictment was found under section 1978, Kentucky Statutes, which reads as follows:

"Whoever shall suffer any game whatever at which money or property is won or lost, to be played in a house, boat, float, or on premises in his occupation or under his control, shall be fined from two hundred dollars to five hundred dollars for each offense."

The premises in question consisted of three stores at the corner of Fourth and Scott streets in Covington. The title to the property was in Ruh's wife. The corner store was occupied by Ruh as a saloon; and he occupied the second story over the three stores as a residence for his family. The second store (No. 338, Scott street) was rented to Allen Carvert by George Cree, a real estate agent who was acting for Ruh. Calvert cut off the front part of his store room by a partition, and used the front part as a cigar store. The rear portion of the store, behind the cigar store, was used for gambling purposes. There were two doors opening from Calvert's place into

Ruh's saloon. One of them opened directly into the room where the gambling was carried on, while the second opening was towards the rear of the building, and was used only occasionally. Calvert sold poker chips to the players for use in the game, and the players would obtain drinks from Ruh's bar. On several occasions Ruh was seen in Calvert's gambling place while the game was going on there. Furthermore, on several occasions the players bought drinks at Ruh's bar, giving poker chips in payment therefor, and Calvert redeemed the poker chips by paying Ruh what he had taken them at. Under this evidence the jury imposed a fine of $200 upon Ruh, and he appeals.

Passing the claim that there should have been a peremptory instruction for the defendant, which is without merit, there are two grounds upon which a reversal is asked.

First, it is complained that the court improperly admitted in evidence acts of the appellant with relation to the management and control of the property immediately subsequent to the indictment. The Calvert store was subsequently rented by Ruh to Wheeler, and Ruh collected the rent without accounting to his wife for it. And after Wheeler's tenancy had expired, Ruh, through Cree, his agent, rented the Calvert store to Rust; and Cree collected the rent for Ruh and receipted therefor in Ruh's name for several months. Ruh also subsequently took out a distress warrant in his own name, upon his own affidavit, stating that the rent for the third house (No. 336, Scott street) was due him. We think this evidence, in the absence of any change of ownership, or control, was competent for the purpose of sustaining the charge that the premises were under the control of the appellant. Miller v. Commonwealth, 13 Bush, 731.

In the second place, it is insisted that the court should have instructed the jury as to the effect of the lease or rental of the premises in question to Calvert, and that the terms "occupation" and "control" should have been defined by the court for the guidance of the jury. The court gave the following instructions:

"1. If you believe from the evidence beyond a reasonable doubt that the defendant, Joseph Ruh, did in this county and State and within five years previous to the finding of the indictment herein suffer games of cards to be played in a house in his occupation or under his control at or in which money or property was won or lost, then you will find the defendant guilty and fix his penalty at a fine of not less than two hundred ($200) dol-

lars nor more than five hundred ($500) dollars, in your discretion governed by the proof.

"2. The expression 'suffering games of cards to be played at which money or property was won or lost' as used in instruction No. 1, means allowing or permitting games of cards to be played with the knowledge that money or property was or is to be won or lost thereon.

"3. Unless you believe from all the evidence beyond a reasonable doubt that defendant has been proven guilty you must acquit him."

The second instruction properly defines and explains the meaning of the phrase "suffering games of cards to be played," and in doing so we are of opinion that it was unnecessary to go further. Bunnell v. Commonwealth, 30 Ky. Law Rep., 492. We think these instructions fully covered the case, and were as favorable to the appellant as he could possibly have asked under the facts of this case.

Wherefore, the judgment is affirmed.