## Allen v. Commonwealth.

(Decided December 7, 1917.)

## Appeal from Fulton Circuit Court.

1. Indictment and Information—Description—Sufficiency.—Where an indictment is for a statutory offense, the description of the offense, in the accusative part of the indictment, is sufficient, if it designates the offense by a brief general description, in the language of the statute, or sufficiently so, as to apprise a person of ordinary understanding of what is meant.

2. Indictment and Information—How Meaning Ascertained.—The meaning of an indictment is to be ascertained from the entire instrument, and not from any particular part of it, alone, and if its averments contain all the necessary things to constitute the offense, and are sufficient to apprise a person of ordinary understanding of what is meant and intended and of what the accused is called upon to answer, the indictment is not bad upon demurrer.

3. Gaming—Slot Machine.—A slot machine is a gambling device, where the one, who plays it, stands to lose money, checks or trade by a hazard or chance.

4. Gaming—What Constitutes Device.—It is not necessary that both parties should stand to lose, in order to make or constitute a device a gambling one.

F. S. MOORE for appellant.

CHARLES II. MORRIS, Attorney General, and HENRY F. TURNER, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

The indictment against the appellant, Joe Allen, accused him of the offense denounced by section 1967, Kentucky Statutes. A trial upon the indictment resulted in a verdict of guilty by the jury, and the imposition of a fine, in accordance with the verdict, in the sum of two hundred and fifty dollars. A motion for a new trial was made and overruled, and being dissatisfied with the judgment, he has brought it by appeal to this court for review. The grounds relied upon for a new trial contain several formal grounds, but the ones, which appellant urges as sufficient to require the reversal of the judgment, and to entitle him to a new trial, are as follows:

First: The court erred to his prejudice in overruling a general demurrer to the indictment.

Second: The court failed to instruct the jury as to the entire law of the case.

Third: The verdict of the jury is contrary to the law and the evidence.

(a) Section 1967, Kentucky Statutes, so far as is pertinent to the questions in hand, is as follows:

"Whoever shall suffer or permit any game or table, bank, machine or contrivance mentioned or included in section 1960, of this chapter, to be set up, conducted, kept or exhibited in any house, boat or float, or on any premises in his occupation or under his control, or shall lease the same or any part thereof for that purpose, shall be fined from two hundred and fifty dollars to five hundred dollars for each offense. . . . . After proof of setting up, conducting, keeping or exhibiting of such table, bank, machine, contrivance or game in any such house, boat or float or place, it shall be presumed to have been with the permission of the person occupying or controlling the same, unless the contrary be proven."

It is necessary to look to section 1960, *supra*, to ascertain what machines and contrivances or games, the suffering or permission of which, are denounced by section 1967, *supra*. The games, tables, banks, machines and contrivances mentioned and included in section 1960, *supra*, are keno banks, faro banks, or other machines or contrivances "used in betting, whereby money or other thing may be won or lost, or a game of cards, oontz, or craps, whereby money or other thing may be won or lost." The two statutes must be read together.

In the accusative part of the indictment, in the instant case, the offense charged is "suffering a gaming machine on premises," and in the descriptive portion of the indictment, the machine is described as a "certain machine and contrivance commonly known as a slot machine, and which machine and contrivance is ordinarily used for gambling for money and property, and for cigars, tobacco and soft drinks, and other things of value," and after alleging that appellant suffered and permitted such a machine to be conducted on his premises, it was alleged, "whereby and at and on which machine and contrivance money and property, cigars, tobacco and soft drinks and other things of value were then and there won and lost, and with the permission, consent and procurement of said Joe Allen." The demurrer, as we understand it, is directed to the insufficiency of the description of the offense as charged in the accusative part of the indictment, and, also, to the effect, that in the descriptive portion of the indictment, the machine, alleged to have operated, is not such a one, as the operation of which is

made unlawful by the two sections of the statute, *supra*. The objections, however, seem to be more a play upon words than of anything of a substantial character. It is true, in the accusative part of the indictment, it does not describe the machine or contrivance as one "used in betting and whereby money or property is won or lost," nor does it contain the statement, that the conduct of the machine was with the knowledge of the accused. The word, suffer, as used in this indictment, and as used in the statute, is synonymous with the word, permit, and both of them imply knowledge of the thing suffered or permitted. To game, used in connection with a machine, whereby money is won or lost, means to gamble, which necessarily means to bet and to win or lose in the operation. The principle is well established, that where an indictment is for a statutory offense, the description of the offense, in the accusative part of the indictment, is sufficient if it designates the offense by a brief general description in the language of the statute, or sufficiently so as to apprise a person of ordinary understanding of what is meant. Knoxville Nursery Co. v. Commonwealth, 108 Ky. 6; Commonwealth v. Schatzman, 118 Ky. 624; Commonwealth v. Drewery, 126 Ky. 183; Overstreet v. Commonwealth, 147 Ky. 471; Drury v. Commonwealth, 162 Ky. 123; Cundiff v. Commonwealth, 86 Ky. 196; Commonwealth v. Grinstead, 108 Ky. 59; Mitchell v. Commonwealth, 88 Ky. 349; Commonwealth v. C. & O. Ry. Co., 101 Ky. 159; Blackburn v. Commonwealth, 15 R. 239; Commonwealth v. Tanner, 5 Bush, 316; Davis v. Commonwealth, 13 Bush, 318; Sellers v. Commonwealth, 13 Bush 331; Commonwealth v. Tower, 8 Bush, 1; Bunnell v. Commonwealth, 30 R. 491. The rule, now applying, is to the effect that an accused, in an indictment, is presumed to have ordinary understanding, and to be able to comprehend what other persons of ordinary understanding are able to comprehend. In Commonwealth v. Stout, 7 B. M. 247, it was held, that if every fact necessary to constitute the offense is charged, or necessarily implied by following the language of the statute, the indictment in the words of the statute is sufficient. In Commonwealth v. Schatzman, *supra,* and Drury v. Commonwealth, *supra,* it was held, that the meaning of an indictment was to be determined from the whole instrument and not from any particular part of it, alone, and if its averments contained all the necessary things to constitute the offense, and were sufficient to apprise a person of ordinary understanding of what was meant and intended,

to be charged, and what the accused is called upon to answer, the indictment is not bad upon demurrer. It is readily apparent, from this indictment that the offense charged is that the accused suffered and permitted a machine ordinarily used for betting, whereby money or property is won or lost, to be conducted upon the premises in his occupation, and it expressly charges that it was done by his consent and permission. The offense described in the accusative part of the indictment of "suffering a gaming machine on premises" amounts to a brief general description of the offense denounced by the statute, and when read with the descriptive part of the indictment, leaves no doubt with regard to what is intended. The complaint, that the description of the machine, in the descriptive portion of the indictment, does not designate such a machine, the operation, of which, is denounced by sections 1960 and 1967, *supra,* in that, it describes it, as a machine ordinarily used in gambling for money or property, instead of a machine used in betting, whereby money or property is won and lost, and for such reason does not describe such a machine as the conduct of which is unlawful, is, also, without merit. To bet is to stake or pledge money or property upon the event of a contingent issue, in other words, to wager. To gamble has no other meaning, except to play or to engage in a game for money or other stake; and to bet upon the result, brought out by a machine, is to gamble by means of the machine for money or property. Gambling is simply a derivative of the word, game, which, when connected with winning or losing money or property, has no other meaning, except to place the money or property for a stake or prize, or to use a machine or contrivance or cards or dice or billiards, according to certain rules, with a view to win money or property, which is wagered upon the contingency of the result of the contest. Hence, to say that a contrivance is ordinarily used in gambling for money or property is synonymous with saying, that the contrivance is one ordinarily used in betting and whereby money or property is won or lost and the indictment explicitly alleges that the machine was one ordinarily used for gambling for money or property and that it was so used upon the premises of the accused, with his permission and consent, and that being so used, money and property were won and lost. Neither does the allegation, that the manner of the operation of the machine was to the grand jurors unknown, make the indictment defective, as it is well known, that there are many and

various kinds of slot machines, the manner of the internal
workings of which are known, but to the expert few.
Hence, the demurrer was properly overruled.

(b)    Objection is not made to the instructions, which
were given, but it is complained, that a substantial preju-
dice to appellant's rights occurred, by a failure, to give
an instruction, which defined the meaning of the words
"suffer" and "permit," as used, in the indictment, and,
in the first instruction given.    The first instruction, in
substance, directed the jury, that, if it believed from the
evidence, beyond a reasonable doubt, that the accused
suffered or permitted a machine or a contrivance, known
as a slot machine, and which was usually used for gamb-
ling, by which money or property was bet and won or lost,
to be set up and conducted on his premises, and that by
the use of the machine, so set up and operated on his
premises, money or property was bet and won or lost, to
find the accused guilty.    It is insisted, that in addition
to this instruction, one should have been given, which de-
fined the words "suffer or permit," as used in the in-
struction, to mean, that the accused allowed or permitted
the machine to be set up and conducted with the knowl-
edge that money or property was, or was to be, bet and
won or lost, thereon.    It is true, that in Bunnell v. Com-
monwealth, *supra*, a conviction for a violation of sec-
tion 1978, Kentucky Statutes, was reversed, because of
the failure to give an instruction, which defined the words
"suffer or permit," as used in that statute.    In that case,
the game, which was proved to have been played, contin-
ued, only, one afternoon, and in a lot, in the open, and
was a game played by throwing and attempting to hit
dummy figures with a ball.    Such an instruction was ap-
proved in Ruh v. Commonwealth, 141 Ky. 585, which was,
also, an indictment for a violation of section 1978, *supra*.
The game suffered or permitted, in that case, was a game
of cards.    Neither the game of throwing balls at dummy
figures nor a game of cards is *per se* unlawful or wrong.
The one was a game of skill and the other one a game of
amusement, and neither necessarily involved the vice of
gambling, and, in neither case, were the games conducted
by the accused.    The court properly held, that the ac-
cused ought not to be convicted, unless the gambling, at
these games, was done with his knowledge, because the
playing of a game by throwing a ball at a dummy does
not necessarily imply a wager and the same may be
said of a game of cards.    It is, also, very clear, that one
indicted for a violation of section 1967, *supra*, should

not be convicted where, the conducting of the machine does not necessarily imply a wager, unless the accused suffers its operation with knowledge that wagers were laid and the wagers won or lost by the results produced by the machine. The mere knowledge that such a machine was being operated upon his premises, without knowledge, that it was being used for gambling, would not make the owner and controller of the premises guilty. The knowledge of the operation of a machine, which necessarily implied gambling in its operation would be different. In the instant case, the proof shows, that the machine was operated, in the same room, in which, the accused did business as a merchant and which was in his occupancy, and under his control; that he carried the keys to it, and that he suffered and permitted any one, who desired to do so, to do the acts in relation to the machine, which are charged to be gambling. There is no pretense, that he did not fully know and understand all, that was done and knowingly permitted it. If the acts proven constituted betting and winning or losing money or property, upon the contingency of certain results being produced by the machine, its operation necessarily implied a wager, and this the accused well knew. There could be no issue upon the subject of his knowledge. Although he stated, that he did not know, that the operations upon the machine were gambling, he does not pretend to any want of knowledge of all the facts, and his opinion, that such facts did not constitute gambling, would not amount to a defense. Hence, his substantial rights were not prejudiced by the failure to give an instruction defining the meaning of the words "suffer or permit," as used in the instructions and indictment.

(c) The contention, that the verdict of the jury was contrary to the law and the evidence, as presented by appellant, is in reality an argument, that the facts proven did not show that the machine, as used, was one ordinarily used in gambling, and in fact neither money nor property was bet, won or lost by the use of the machine. The machine was called by the appellant a "chewing gum slot machine." Within the machine there was ordinarily kept a quantity of chewing gum, in packages, which had printed upon them the statement that they were each five cent packages. Near the top of the machine was a slot, and when a nickel was introduced into the slot, and a small lever turned, it would descend and by reason of some mechanism of the machine, there would be cast out, near the bottom of the machine, one of these packages

of chewing gum. If there was no chewing gum in the machine, the appellant would give to the player, who had deposited his nickel, a package of chewing gum. When the proper quantity of chewing gum was in the machine, the deposit of a nickel in the slot would always result in the player receiving a package of chewing gum. If this had been the invariable result, and nothing more, of a deposit of a nickel in the slot, the player, as well as the owner of the machine, would have known, in each instance, exactly, what the result would be, and there would be no element of chance connected with it. However, sometimes, and how frequent, the evidence does not show, when a nickel was deposited, in addition to the package of chewing gum, there would be thrown out "chips," in various quantities, which were worth in trade, at appellant's store, five cents apiece. At other times, when a nickel was deposited in the slot, only a package of chewing gum would be the result and no "chips" would accompany it. The "chips" could, also, be used in playing upon the machine, and, when one of them was deposited in the slot, sometimes, the machine would give out to the player a package of chewing gum, and at other times it would put out nothing, and in that event the player had simply lost the chip, which he had deposited in the slot and the machine had won the value of the "chip." There was, also, proof by one witness, that upon some occasions when a nickel was deposited in the slot, that neither chewing gum nor "chips" would result from it, and hence, the nickel was lost to the player and won by the machine, but, conceding, that the deposit of a nickel would always procure for the player a package of chewing gum, nothing could be clearer than, that, the chance of the chewing gum being accompanied with chips was a mere hazard and chance, and that the amount, which the player would receive for the deposit of the nickel, while he would certainly receive a package of chewing gum, he might receive "chips," which would be of the value according to the number of chips, which were, also, received; and it is very clear, that they would be the only inducement for using the machine in procuring the chewing gum, otherwise, most of the purchasers would prefer to see the goods, which they would receive before buying. When chips were used instead of nickels, as to whether the player would win or lose, or whether the machine would win or lose, would be contingent upon the uncertain chance as to whether or not the machine, in response to the deposit of the "chip,"

would produce the player chewing gum or chips or nothing. So, in the use of the machine, the one, who plays the machine stands to win or lose money, chewing gum or "chips" by a mere chance, and it can hardly be presumed that an individual would install a machine, by the operation of which he would eventually and finally be the loser, but it has often been held, that it is not necessary, that both parties should stand to lose in order to constitute or make a device, a gambling one. Where the player deposits a nickel in the machine, the chance is, that he may receive more than the value of his nickel in return. He may receive one or several "chips," which are worth five cents, each. This appeals to his propensity for gambling. He is attracted by the chance, that he will receive something for nothing. The proprietor of the machine may be recouped from the losses, when the machine pays out in addition to the package of chewing gum, one or more "chips," by the extra profit, which he receives on the package of chewing gum sold when the deposit of the nickel results in only a package of chewing gum and he, also, stands to win back all the "chips" and probably money, while the player is continuing his attempt to secure something for nothing. There are statutes in nearly every state inhibiting the use of machines and contrivances for gambling and the statutes contain, as a matter of course, many different terms, and besides, the ingenuity of those attempting to construct machines, which are gambling devices, but so as to have their operations within the letter of the law, that the number of slot machines and the kinds are innumerable. The various adjudications of the courts of last resort, in the various jurisdictions, have formulated different rules for determining when a slot machine is a gambling device, but one, which seems to have been accepted very generally, is, that where one, who plays a slot machine, stands to win or lose money, trade or checks by a hazard or a chance, the machine is then held to be a gambling device, and the use of it to be gambling. In other words, it thereby becomes a contrivance used in betting, whereby money or other thing may be won or lost, as denounced by our statute. The following adjudications in various ways seem to support this rule: Loiseau v. State, 114 Ala. 34; State v. Vasquez, 49 Fla. 126; Jeffries v. State, 61 Ark. 308; Kotshorn v. State, 97 Ga. 343; Lyman v. Kurtz, 166 N. Y. 274; Christopher v. State, 41 Tex. Crim. App. 235; Territory v. Jones, 20 L. R. A. (N. S.) 239; State v. Ferguson, 178 Ind. 568; Salt Lake City v. Doran, 42 Utah 401; State

v. McTeer, 129 Tenn. 535; People v. Nahmias, 146 N. Y. S. 856; People v. Stein, 146 N. Y. S. 852; People v. Jenkins, 138 N. Y. D. 449; Muller v. Stoecker Cigar Co., 89 Neb. 438; Moberly v. Deskin, 169 Mo. App. 672; New Orleans v. Collins, 52 La. Ann. 973; Ford v. Oliver, 124 N. W. 1067; Lang v. Meriven, 105 Am. State Reports 293. The judgment is therefore affirmed.