## Welch v. Commonwealth.

(Decided February 5, 1918.)

### Appeal from Fayette Circuit Court.

1. Gaming—Device or Implements—Slot Machines.—Whether a slot machine is a gambling device in the meaning of sections 1960, 1967, Kentucky Statutes, depends upon whether its use by the person playing it would enable him to lose or win money or other thing of value by a hazard or chance.

2. Gaming—Device or Implements—Slot Machines.—If a slot machine is so constructed as that the dropping of a nickel therein will invariably return to the player a package of chewing gum and the dropping of a second nickel another package of chewing gum and, in addition, a chip or chips which may be of greater value than the nickel deposited and good for the purchase of anything

of its value in the establishment of the owner of the slot machine. such machine is a gambling device, although the player may learn, before the dropping of the second or subsequent nickels in the machine, from an indicator attached to the machine, how many chips and their value, in addition to the chewing gum, he will receive for the nickel or nickels deposited. While upon depositing the first nickel the player might know exactly what he was to receive from the machine in return, yet the indicator at the end of the play might show that the next nickel deposited instead of drawing only a package of chewing gum, might draw, in addition thereto, as much as a dollar's worth of chips.

3. Gaming—Device or Implements—Slot Machines.—The only difference between the slot machine here mentioned and that described in the opinion in Allen v. Commonwealth, 178 Ky. 250, is that the former indicates in advance the result of the next play. But that does not make it any less a gambling machine than the one denounced as such in the Allen case, for it is possible for a player to put a nickel in the slot and obtain from the machine a package of gum worth two or three, or even five cents, and checks good for merchandise of the value of one dollar. Consequently, the player would be little inclined to stop as long as the indicator would continue to point at trade checks, at a certainty of gain. Therefore, the player is enticed to continue by the fact that he is getting five cents' worth of gum for each play with always the chance just ahead that the next presentation of the indicator will give him the opportunity of winning from one hundred to many times that per cent. So the lure is the opportunity to win from ten cents to one hundred cents by the deposit and expenditure of five cents.

EDWIN N. CASEY for appellant.

CHARLES H. MORRIS, Attorney General, and HENRY F. TURNER, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SETTLE—Affirming.

The grand jury of Fayette county returned against the appellant, E. A. Welch, the following indictment (formal parts omitted):

"The grand jury of Fayette county . . . accuses E. A. Welch of the offense of permitting gambling on premises of which he has control . . . . that said E. A. Welch on the 28th day of April, 1917, in the county aforesaid and within twelve months next before the finding of this indictment, he then and there being the occupant of and in control of a certain house and premises located at No. 227 North Limestone Street in the City of Lexington,

Ky., did knowingly, wilfully and unlawfully suffer and permit a machine and contrivance, such as is ordinarily used for gambling for money and property of value, to-wit, a slot machine used in betting whereby money and other things of value may be bet, won and lost, to be set up, conducted, kept and operated and exhibited in said house and premises, and on said slot machine so set up, conducted, kept, operated and exhibited as aforesaid, money and property of value was then and there bet, won and lost against the peace and dignity of the Commonwealth of Kentucky. . . . "

When the case was called for trial the defendant waived the right of trial by jury and by agreement, made with the Commonwealth, submitted it to the court upon the law and the following agreed statement of facts:

"It is agreed that the machine in question is about two feet wide and about three and one-half feet in height and is known as a gum vending machine; that the machine is operated by dropping a nickel in the slot which is in front of the machine and pulling down a lever. The machine is loaded with packages of chewing gum and metal checks each of which is good for five cents in trade at the defendant's cafe. There is a dial about three inches in diameter on the front of the machine which works automatically and plainly indicates to the player before each play what he will receive for his nickel. After he plays the indicator points to another number showing what the next player will get. That is, when the hand points to 'gum' the player drops a nickel in the slot and knows he will receive only chewing gum. If the dial points to 'two' the player knows when he drops in his nickel that he will receive a package of chewing gum and two chips (checks); if it points to 'four,' a package of chewing gum and four chips; if to 'twelve,' a package of chewing gum and twelve chips; if to 'sixteen,' a package of chewing gum and sixteen chips; if to 'twenty,' a package of chewing gum and twenty chips. With each play the machine gives a package of chewing gum of a standard brand. The machine always gives the results as above mentioned and the player always knows before he plays just what he will receive for his nickel. The dropping of a nickel in the slot causes the machine to drop to the player the gum or gum and chips indicated on the dial and automatically sets the machinery so that the dial indicates what will be the result of the next play.

"The chips or checks are good for five cents each in trade at the defendants' place of business.

"At various times, in the cafe run by the defendant, divers persons were permitted within twelve months prior to the finding of the indictment to play the said machine by dropping nickels therein and to receive from the machine in addition to the gum the number of checks entitled by each play on the dial of the machine; and divers persons were permitted to and did play said machine in the said manner and did receive checks in addition to the gum and exchanged the said checks for merchandise in the defendant's place of business."

The trial court held that the appellant was guilty of the offense charged in the indictment and by the judgment entered so declared and fixed his punishment at a fine of $200.00. He filed a motion and grounds for a new trial which the court overruled. And from that judgment he prosecutes this appeal.

The grounds urged by appellant for the new trial and now relied upon for the reversal asked of the judgment, were and are, that the judgment is contrary to law and unsupported by the evidence. So the question presented by the appeal for our decision is, Is a slot machine, such as the appellant admittedly operated in his cafe, a gambling machine or device, the use of which is prohibited by sections 1960-1967, Kentucky Statutes, under which the indictment was found?

It is appellant's contention that it is not because, when the operator plays the machine he gets a package of gum and by looking at the indicator knows in advance of dropping in another nickle whether or not he will get any checks and, if so, how many. This fact, it is further claimed, deprives the playing of the machine of any element of chance. It is also argued by appellant's counsel that whether this slot machine is a gambling device must be determined by the single play and that in determining the question the court cannot extend the consideration to the possibility of any future play. In other words, that a machine to be a gambling device must be so constructed, manipulated and used in each play and at each time, that each play in itself will be an act of gambling. This contention ignores the fact that there might be in the mind of the player a hope or expectation that on some future play he would receive more than the indicator shows he will receive on the one he is

making. There is nothing in the case of Allen v. Commonwealth, 178 Ky. 250, cited by appellant's counsel, that sustains their theory of this case. The difference between the machine in the Allen case and the one we here have is, that in the Allen case while the deposit of a nickel would always procure a package of chewing gum the chance of the chewing gum being accompanied by checks was a mere hazard; the player might or might not get the chips in addition to the chewing gum. This introduced an element of chance in the playing of the machine which the opinion declares would appeal to the player's propensity for gambling, whereas in the case of the present machine while the same element of chance obtains, instead of its resulting from the dropping of one nickel in the slot, it comes from the dropping therein of two nickels or a dime; that is, in beginning to play the machine the player would know that his first nickel could only get him a package of chewing gum, yet by paying his second nickel or ten cents he might receive two packages of chewing gum and as much as a dollar's worth of checks; and it is this which constitutes the element of chance. The question whether the identical machine here involved is a gambling device seems to have been well settled in other jurisdictions. Thus in State v. McTeer, 129 Tenn. 533, the court said: "The question raised is whether the slot machine described is a gambling device. We are of the opinion it is." The contention was made in that case as here that it was not a gambling device because the indicator always showed what the player was to get before he deposited his nickel and for that reason that there could have been no element of uncertainty or chance in playing the machine. In rejecting this contention the court declared that while upon depositing the first nickel the player might know exactly what he was to receive from the machine in return, yet the indicator at the end of that play might show that the next nickel deposited, instead of drawing only a package of chewing gum, might draw in addition to a package of chewing gum one dollar's worth of checks. In this connection it is, in the opinion, said:

"The lure is the opportunity to win from ten to one hundred cents by the deposit and expenditure of five cents. There must be at least one play before any of the numbers mentioned is shown on the indicator and there may be many and it is not known which number will ap-

pear nor at what time nor after how many plays . . . .
However, there is always a chance that any single player,
by the expenditure of ten cents through making two plays
of five cents each may obtain not only a package of chew-
ing gum worth five cents but checks worth from ten cents
to one hundred cents and so in proportion for many plays
and a corresponding loss to the owner of the machine on
such individual deals.  The player is enticed to continue
by the fact that he is getting five cents' worth of gum for
each play with always the chance just ahead that the next
presentation of the indicator will give him the opportun-
ity of making a profit of from one hundred to many times
that per cent.  We think this shows the machine is a
gambling device.''  In People v. Jenkins, 153 New York
512, the same conclusion was reached.  The slot machine
being the same that we have in the instant case.  In the
opinion the court said:

"Thus, in addition to the gum and trade checks indi-
cated as the certain result upon the dropping of a nickel
is given an option to obtain a package of gum and an un-
certain number of trade checks upon the dropping of the
second nickel.  That this uncertain option has in it such
an element of chance as constitutes gambling can hardly
be questioned; in fact, this element of chance only gives
to the machine its value and that this to us is within the
direct prohibition of the penal law seems clear.''

The case of Moberly v. Deskins, 169 Mo. 672, brings
out even more clearly the element of chance that neces-
sarily results from the use of a machine like the one in
question.  In that case the court said:

"The only important difference between the device in
that case and the one under consideration is that the lat-
ter indicated in advance the result of the next play.  But
that is found on analysis to be a distinction without a
substantial difference.  It was possible for a player to
put a nickel in the slot and obtain from the machine a
package of gum worth two or three cents and checks good
for merchandise of the value of one dollar.  One cannot
imagine that a player would stop when the indicator
pointed at trade checks, i. e., at a certainty of gain.  Con-
sequently, the inventor of the device knew that when each
new player began, the indicator would point to gum only,
i. e., to no reward for the next play, but he also knew
that in the vast majority of instances the dealings be-
tween the player and the machine would consist of more

than a single play, and we hold as unsound the view of defendant that each play constituted a separate and distinct transaction in the sense of ending the relation of the player to the machine, which was designed and intended to include a number of plays. The contrivance was intended to allure the player into continuing to play in the hope that the next time the finger would point to trade checks and thus bring him something for nothing. Clearly the machine was a gambling device." In re Cullman, State Commissioner of Excise, 99 N. Y. Supp. 1097, the court said of a machine like this:

"The inventor of the present machine has attempted to obviate the criticism to which other slot machines have been subjected by cunningly returning to the operator of the machine a check or ticket which secures to him in cigars or liquor the amount of his stake. Like most endeavors to adhere to the letter of the law while violating its spirit he cannot succeed. The present device attractively administers to the gambling humor the same as other slot machines of substantially the same design. Unless it did this it would not entice the customer. If in every instance it actually returned five cents in coin to the player no one would pretend that the device would attract any one. So, if on every case a ticket was run out calling for five cents in trade, no person would take the trouble to drop a nickel in the slot. It is the hazard—the chance of winning more than the sum ventured—which draws people to the machine, and that element was the conspicuous one retained in its mechanism, and it is that which brings it within the condemnation of the statutes forbidding gambling in a place where liquor is sold."

Appellant's counsel admit they have not been able to find any authority in support of their contention emanating from any court of last resort in the United States. They, however, cite the case of Rex v. Stubbs, 25 D. L. R. 424, decided July 15th, 1916, by the Supreme Court of Alberta, Canada. The excerpt from the opinion of which quoted in their brief, does seem to support their contention, but the opinion is so out of harmony with the authorities in this country and also with our own views of this case, that we are unwilling to adopt its reasoning or conclusions. We are unable to see that the machine operated by appellant in his cafe is any less a gambling contrivance than that condemned as such in Allen v. Commonwealth, *supra*. It undoubtedly appeals to the

player's propensity to gamble. The thing growing out of its use that attracts the player is the chance that, ultimately, he will receive something for nothing. It, therefore, contains the vice at which the statute is directed, and though the inventor of the machine has endeavored to adhere to the letter of the law, the fact remains that he has violated its spirit.

We find no error in the judgment of the circuit court, and it is, therefore, affirmed.