## Commonwealth v. Bowman.

(Decided Nov. 17, 1936.)

(As Extended on Denial of Rehearing March 26, 1937.)

■■■■■■■■■■■■■■■■■■■■■■

B. M. VINCENT, Attorney General, and A. E. FUNK and ROS-COE VINCENT, Assistant Attorneys General, for appellant.

ROSE & STAMPER for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Reversing.

The grand jury of Owsley county has returned an indictment against Andy Bowman for the offense of suffering and permitting "a machine or contrivance, such as is ordinarily used for gambling for money or property, to-wit: a pin and ball machine used in betting whereby money and other things of value may be won or lost, to be set up, conducted, kept and exhibited in a house and on premises under his control and upon said machine money and property was bet, won and lost, * * *" which offense is denounced by section 1967, Kentucky Statutes.

At the close of the evidence for the Commonwealth, the court upon motion of defendant instructed the jury to find him not guilty and entered judgment in conformity with such directed verdict, and the Commonwealth is here on motion for appeal as provided by section 348 of the Criminal Code of Practice.

The evidence shows that the contrivance in question is what is known as a pin-ball machine. Players would deposit a nickel in a slot and 10 balls would be placed in a position for playing. A spring trigger or plunger would be pulled back and, when released, would shoot a ball toward or against the upper end of the machine, the surface of which inclined toward the player. It would then roll back down the surface of the machine on which numerous little pins were set and which was interspersed with numbered holes. The ball would strike a pin and be deflected and thus make its way to the lower end of the machine unless deflected into one of the numbered holes on its way down. After 10 balls had been shot, the numbers of the holes into which the various balls might come to rest would be totaled and, if they aggregated 11,000, the player would get a ticket worth 5 cents in trade. He might, however, win tickets worth 5 cents each varying in number from 1 to 20 by making certain totals above 11,000.

Willard Bowman, a 12 year old boy, testified that

he played the pin-ball machine located and operated in the restaurant conducted by appellant; that sometimes he won 50 cents worth of tickets and sometimes a dollar's worth, but that he had lost more often than he had won; that he would trade the tickets back for merchandise in the restaurant; that appellant was there several times when he was playing the machine and he had traded the tickets back to him for articles of merchandise; that the reason he would spend 5 cents to get the balls was that he was trying to get 50 cents or a dollar's worth of tickets; that after practicing on the machine he could make a larger score. The evidence of Moffit Barrett, the other witness introduced by the Commonwealth, is to the same effect.

Section 1960, Kentucky Statutes, makes it a felony to "set up, carry on, keep, manage, operate or conduct * * * a keno bank, faro bank or other machine or contrivance used in betting whereby money or other thing may be won or lost" or for aiding or assisting another in so doing, either with or without compensation and section 1967 makes it a misdemeanor punishable by fine to "suffer or permit any game or table, bank, machine, or contrivance, mentioned or included in sec. 1960 of this chapter, to be set up, conducted, kept or exhibited in any house, boat or float, or on any premises in his occupation or under his control."

The only question presented by this appeal or argued in briefs for the respective parties is whether the Commonwealth has made out a case under section 1967, Kentucky Statutes.

It is the contention of the Commonwealth that the pin-ball machine described in the indictment and evidence is a machine or contrivance used in betting whereby money or other things of value may be won or lost within the meaning of section 1960 of the Statutes and therefore comes under the condemnation of section 1967. On the other hand, it is contended by counsel for appellee that the machine in question is a game of skill and that prizes awarded for successful exhibition of skill are not illegal, and, further, that there is a total failure of proof of the offense charged in the indictment.

Argument that this is a game of skill is based on evidence of the witnesses that by practice in pulling back the plunger or trigger they could make a better

score; but, notwithstanding any question of skill in the operation of the machine, the element of hazard and chance still remains. There is quite a difference between a prize for skill and a hazard or chance on skill. It is also quite apparent from the evidence that, notwithstanding any skill of the players, they more often lost than won, and it is further apparent, as held in Commonwealth v. Miller, 246 Ky. 83, 54 S. W. (2d) 632, that in the game of "bally-round," which is similar to pin-ball, no element of skill of the player is involved. It is obvious from the evidence that the player stakes his 5 cents on a chance of winning more and the owner or operator of the machine hazards the amount that might be won against the player's chance of winning. Punchboards and slot machines have come under the condemnation of this court, as also have vending machines, where the one depositing a coin receives packages of chewing gum, etc., but stands a chance of receiving additional packages of greater value than the coin deposited. See Welch v. Commonwealth, 179 Ky. 125, 200 S. W. 371, L. R. A. 1918C, 651; Allen v. Commonwealth, 178 Ky. 250, 198 S. W. 896; Commonwealth v. Gritten, 180 Ky. 446, 202 S. W. 884, 885. See, also, State of Rhode Island v. Certain Gambling Instruments of Samuel O. Paul, 46 R. I. 347, 128 A. 12, 38 A. L. R. 71, and cases cited in notes beginning at page 73 and including Moberly v. Deskin, 169 Mo. App. 672, 155 S. W. 842, 844, wherein it is said:

"In no field of reprehensible endeavor has the ingenuity of man been more exerted than in the invention of devices to comply with the letter, but to do violence to the spirit and thwart the beneficent objects and purposes, of the laws designed to suppress the vice of gambling. Be it said to the credit of the expounders of the law that such fruits of inventive genius have been allowed by the courts to accomplish no greater result than that of demonstrating the inaccuracy and insufficiency of some of the old definitions of gambling that were made before the advent of the era of greatly expanded, diversified, and cunning mechanical inventions. The chief element of gambling is the chance or uncertainty of the hazard. It is not essential that one of the parties to the wager stands to lose. The chance taken by the player may be in winning at all

on the throw, or in the amount to be won or lost, and the transaction should be denounced as gaming whenever the player hazards his money on the chance that he may receive in return money or property of greater value than that he hazards. If he is offered the uncertain chance of getting something for nothing, the offer is a wager, since the operator offers to bet that the player will lose and in accepting the chance the player bets that he will win.''

That excerpt clearly expresses our views concerning this case and renders further elaboration unnecessary.

However, it is further contended that, since the contrivance in question was not specifically named in section 1960, Kentucky Statutes, it was incumbent upon the Commonwealth to charge in the indictment and to prove that it was a contrivance such as is ordinarily used for gambling for money or property, and in support of this contention Ritte v. Commonwealth, 57 Ky. (18 B. Mon.) 35, and Commonwealth v. Etses (Ky.) 121 S. W. 423, are cited. The indictment against appellee does charge in specific terms that the contrivance was such as is ordinarily used for gambling for money or property, and no question is made concerning the sufficiency of the indictment in this or other particulars, but it is urged that the evidence fails to sustain the indictment in this respect. In the Ritte Case it was held that a statute similar to the one under consideration was not meant to embrace backgammon, chess, dominoes, etc., kept for mere amusement and not as instruments for gambling; and in the Estes Case, where only the sufficiency of the indictment was involved, it was held in effect that the indictment was defective, in that the contrivance in question was not specifically named in the statute and it was not alleged that it was a contrivance ordinarily used for gambling. In addition to what we have already recited, the evidence further shows that there was printed information or instructions on the face of the pin-ball machine as to how it was operated and the amount that would be won by making various scores; and that it was played by the witnesses for that purpose; in fact, the evidence establishes that this was the only purpose of the device.

As has often been said by this and other courts, no

trick, device, or subterfuge should or will be permitted to defeat the operation of the law against gambling, and courts will look through the shadow and veil of dissimulation to the substance. The evidence leaves no escape from the conclusion that this pin ball machine as maintained and operated was in contravention of the Statutes, and it therefore follows that the court erred in instructing the jury to find appellee not guilty.

In Commonwealth v. Gritten, supra, which was a prosecution under section 1967, Kentucky Statutes, it was said:

"Here the offense with which the defendant is charged is a misdemeanor punishable by fine alone. Under these circumstances the commonwealth may appeal from the judgment of acquittal, and upon a reversal thereof have a new trial of the case, notwithstanding the former verdict and judgment of acquittal. Commonwealth v. Prall, 146 Ky. 109, 142 S. W. 202, Ann. Cas. 1913C, 768."

For the reasons indicated, the judgment is reversed and cause remanded for a new trial in conformity with this opinion.