## MILLS NOVELTY CO. v. FARRELL, Chief of Police.

### No. 2279.

District Court, D. Connecticut.

March 1, 1933.

David P. Siegel, of New York City, and David A. Wilson, of Hartford, Conn., for plaintiff.

Garrett J. Farrell (by Frederic J. Corbett, Corp. Counsel), of Hartford, Conn., for defendant.

THOMAS, District Judge.

By stipulation this case is at final issue upon the bill of complaint, answer, affidavits, exhibits, and oral testimony. The question presented is whether plaintiff's rights have been violated in view of the provisions of the Fourteenth Amendment to the Constitution of the United States.

The evidence shows that the Mills Novelty Company, an Illinois corporation, doing a business estimated at $6,000,000 annually, is engaged in the manufacture and sale of candy mints as well as a certain type of automatic vending machine described as the "Mills Non-convertible Vender." It leases these machines to storekeepers under an agreement which provides for the sale of mints manufactured by complainant through the agency of these vending machines.

Paragraph 6 of the bill well describes the appearance and operation of the machine, and as defendant's answer admits the allegations of that paragraph, it is here set forth in extenso. It alleges:

"Sixth: That the said automatic confection non-convertible vending machines resemble in appearance and size a cash register of the ordinary type, on the right side of which there is a metal lever, and on the front thereof there is a column container on each side, covered with a pane of glass, each of which columns holds the packages of confections dispensed by the said machines; and between said columns is a container for metal tokens, which said container is covered with a glass front. At the upper left hand corner of these machines there is a coin intake aperture for the insertion of five-cent pieces. The machines are put into operation by the insertion of a five-cent piece in the aforementioned aperture and by the drawing down of the aforementioned lever and the releasing thereof so that it returns to its former stationary position. At the base of the machines on the right hand side, there is located a metal knob which releases a package of the confections from one of the column containers upon being turned by the customer. When the machine is put into operation, three wheels or cylinders revolve, each independently of the other, and at different rates of speed. Printed upon each of the aforementioned cylinders are certain symbols, over each of which is inscribed an incomplete sentence and said sentences are so arranged that when the cylinders cease revolving, said incomplete sentences, when read through three small glass windows, located near the top of the machine, form complete sentences of a humorous vein. When the aforementioned operations are completed, the customer turns the aforementioned metal knob, releasing a package of the confection. The confection sold by these machines are equal in value to similar merchandise retailed at the same price in confectionery and candy stores throughout the District of Connecticut. At intervals, in addition to the package of mints which the customer receives, the machine delivers certain metal tokens in various numbers, which tokens have clearly inscribed on one side 'Property of O. K. Vender' and on the other side thereof 'For amusement only.' Said tokens have no cash or trade-in value and can be used only to permit the customer to further amuse himself without additional expense. When one of such tokens is inserted and the lever operated as aforesaid, further combinations of the humorous sayings printed on the cylinders may be read. No confections can be obtained from the machine when it is operated by the use of one of the aforesaid metal tokens. Placed in a conspicuous position on the front of each of the said machines are two small printed signs, one of which says 'Watch reels for your fortune. Tokens received from this vender have no value, but may be used to replay this vender for customers' sole amusement. Watch the reels and have your fortune told.' The other sign reads 'Your nickel buys 5¢ candy 5¢ deposit nickel and turn knob at lower right hand side to receive one five-cent package of Vens. A package of confectionery vends with each five cent. Confectionery not vended with amusement tokens.'"

As paragraph 10 of the bill, which is also admitted by the answer, sets forth the terms upon which the machines are leased, it is also set forth as pleaded. It alleges:

"Tenth: That heretofore, and prior to the 10th day of February, 1933, the complainant herein leased to various persons under an agreement one or more machines of the character and description set forth in the Sixth Paragraph of this complaint, by which agreement the complainant agreed to rent to the said person designated as the lessee, the said machine or machines for a period of one or more months, and that the lessor agreed to keep the machine in working order, to make any and all necessary repairs thereto, to supply the confection at a certain price per hundred packages, and other items necessary for the operation of said machines; the lessees agreed to place the machine in prominent places in said premises and to protect said machine from all unnecessary damage; that the lessee agreed to allow the lessor access to said machines; that the lessee was to receive a certain percentage of the net profits from the operation of said machine or machines, the balance to be retained by the lessor as rent for said machine or machines; the lessee agreed to operate the said machine in strict accordance with the laws of the State of Connecticut; that the lessee was not to exchange the amusement tokens that may be received by persons playing the machine for money or other merchandise, and to instruct all clerks and employees that they are not to exchange the amusement tokens for money or other merchandise under any consideration; that the lessor reserves the right to remove the vender without notice to the lessee in the event that any of the clauses of the agreement were violated by the lessee, his clerks or employees; that this agreement might be cancelled by either party hereto upon one day's notice, or immediately by the lessor upon the suspension of operation of the machine for any cause by the lessee."

It further appears that while forty of complainant's machines were, on the 10th day of February, 1933, in the possession of complainant's lessees in the city of Hartford, the police officers, acting under orders from the defendant, seized and carried away such machines and arrested the lessees, and that defendant threatens similar action with respect to any such machines and persons as may hereafter be found in the city of Hartford.

While the original prayer for relief was for an injunction pendente lite, by stipulation the parties have agreed that a trial upon the merits will adduce nothing more than was presented at the hearing for preliminary injunction and that final determination shall be here made and final decree entered upon the ultimate decision of the issues here presented by the Circuit Court of Appeals for the Second Circuit, and at oral argument it was asserted by counsel for complainant that no further attempt to lease or operate any of its machines would be made in Connecticut until the questions presented have been finally determined by the Circuit Court of Appeals.

This suit was brought to restrain the defendant from *unlawfully* making and threatening to make such seizures and arrests and from *unlawfully* molesting the complainant and its lessees in the conduct of their business. It goes without saying that if complainant's or its lessees' business is unlawful or if, in the course of its business, the complainant uses, leases, sells, or operates a gambling machine in violation of the statutes of Connecticut (Gen. St. 1930, §§ 6318, 6324, 6325), this court will not interfere to grant any relief whatever. And by the same token, if the machines manufactured and leased by complainant are not gaming or gambling devices, a policy of judicial inertia in the face of an arbitrary exercise or assertion of official power would be unjust. We are thus brought to the point of determining whether or not complainant's machine is, per se, a gambling device.

From the description of the machine, as well as from its operation in court, it clearly appears that its operation causes it to vend to its customer a package of mint candy and during the same operation turns up in its upper panel, for the patron's perusal or momentary amusement, a witty saying, but nothing of any value in the form of money is ejected. Metal discs, however, containing holes in their centers, varying in number according to the combinations formed by pulling a lever may fall out, which when re-inserted and the machine again operated cause no mints to be released, but merely continue to turn up such "manufactured humor."

With the actual return to the patron of anything of value in the form of money eliminated, there only remains to be considered whether the metal discs or the so-called witty sayings resulting from their re-insertion and operation of the machine is such a form, or are such items of value, as are sufficient to warrant a finding that the machine is a gambling device. Prior to the advent of this "non-convertible" machine, courts generally held that this type of slot machines were gambling devices, and the findings in such instances were based upon the fact that the proprietor could easily release a spring in the mechanism of the machine, so that the continued operation of the machine would release nickels. Here, however, is a new device. It is new in construction. It is termed "non-convertible," as distinguished from convertible, meaning thereby that it cannot possibly be converted so that the playing of a token or slug will ever release money. This non-convertible feature clearly distinguishes it from the old machine. The spring for conversion purposes is completely housed by a metal container which is part of and integral with the bar mechanism which makes it impossible for the store proprietor to change the operating mechanism so as to convert it into a gambling machine without destruction of the bar to which the metal housing is permanently attached, in which case the machine then becomes entirely inoperative for all purposes.

The question of slot machines has been before the courts in many jurisdictions and opinion regarding them is varied and divergent. See People v. Jennings, 257 N. Y. 196, 177 N. E. 419; Ashcraft v. Healey (C. C. A.) 23 F.(2d) 189; Green v. Hart (D. C.) 41 F. (2d) 855; White v. Hesse, 60 App. D. C. 106, 48 F.(2d) 1018, 1019; Boynton v. Ellis (C. C. A.) 57 F.(2d) 665; Chambers v. Bachtel (C. C. A.) 55 F.(2d) 851.

In People v. Jennings, supra, the Court of Appeals of New York said: "By the dropping of a coin in the slot and the pulling of a lever, a candy mint falls out of the machine and a witty or funny saying appears in an upper panel. One or more metal rings of no intrinsic value may also fall out, according to combinations formed upon the turn of the lever. These rings or metals have no money value. By their insertion in the slot, other bright or witty statements appear in the panel. The only chance connected with

558

the operation of the machine is that wit or humor may momentarily brighten up the vacuous minds hunting amusement. In this machine age, even humor is manufactured. The product, however, is valueless from a monetary standpoint, perhaps, if not from any other."

It seems to me that the views expressed by the court of last resort in New York State should control here, especially in view of the obvious fact that no one can convert the machine at bar so as to get money from it by the insertion of the metal discs which fall out when one purchases a roll of mints for 5 cents. After it was made clear from the testimony that the metal housing was part of and integral with the bar mechanism of the machine and that the machine is now so constructed that it is impossible for the proprietor to convert it into a gambling machine, the defendant nevertheless testified that the machine still has a tendency to develop a "gambling instinct" and stress was made of this evidence in argument by counsel for defendant. But, as I view it, the machine can only furnish amusement, no matter how highly developed one's "gambling instinct" may be. The continued playing of the metal discs into the machine can bring out of it nothing but amusement. That probably and undoubtedly does stimulate the sale of mint candy because when the few metal discs, three, four, or five as may come out of the machine with the first 5 cents played, are exhausted, it is quite true that the player may deposit another nickel and get a second roll of mint candy and more slugs. With these he can only get more amusement, but nothing more.

To hold that the machine at bar is a gambling machine per se because, as pointed out by the Court of Appeals of New York, valueless rings are ejected and valueless literature, humorous or otherwise, is exhibited, or to regard it as an instrumentality conducive to fostering the gambling instinct in its users, would be to disregard and dismiss what is the common experience of all men, "that the gambler plays for money, not for literature." People v. Jennings, supra.

■ Therefore I must conclude and so hold that the complainant's machine is, per se, a mint vending agency and not a gambling device. Furthermore, it is not such a device, per se, as is condemned by the General Statutes of the State of Connecticut. It, therefore, follows that unless there appears other legal justification for the seizure of complainant's machines and the arrest of those in possession, the acts of the police officers of Hartford were arbitrary, unlawful, and tantamount to virtual confiscation of complainant's property, and that unless such seizures and arrests are otherwise legally justifiable, complainant has due cause for charging that it has been deprived of its property without due process of law and that the privileges and immunities guaranteed it under the Fourteenth Amendment to the Constitution of the United States have been violated.

■ It appears from the testimony that the defendant, in pursuit of what he deemed to be his lawful duty as chief of police, has adopted an attitude that complainant's machines as well as all machines similar in description are condemned by the state's laws and are subject to seizure on sight and persons in possession to summary arrest. Presented as a defense of this attitude and urged by defendant as an equitable ground for denying the relief prayed for in the bill are the defendant's assertions that the machine at bar, if it is not a gambling device per se, is readily convertible into a gambling machine either by mechanical manipulation or through exchange of the tokens for cash or merchandise by the storekeeper as such instances have come under his observation with machines of the convertible type. The evidence further shows that the seizures of the machines at bar and the arrest of the store proprietors was predicated upon the erroneous assumption by the defendant that the machines here under seizure and discussion were the same in construction as the old type or convertible machines—convertible at the will of the proprietor. The first point, to wit, the conversion features have been already disposed of by showing that the machine cannot be converted. There is no force in the second contention. As well may we say that if one has an automobile capable of high speed the owner should be arrested because he could, with that machine, violate the motor vehicle laws of Connecticut, and so he should be arrested. The common sense of the matter is that if, as, and when that automobile, not speedy per se, is so driven by the owner in violation of law, then the arrest follows. So, too, with the case at bar; as long as the machine is not a gambling device per se, if, as, and when the police secure evidence to show that the machine or the proprietor, by the exchange of money or merchandise for the metal discs with the player of the machine, then and not till then the proprietor has violated the law and is subject to arrest by the police.

As I view it the use of the tokens is in a certain sense an advertisement for the sale of mints through the medium of the so-called amusement feature. To put it in another way, it is a machine salesman. Objection to slot machines generally is made and urged by many. But constitutional guaranties cannot be cast aside to meet the exacting views of those critical of any slot machine. It is argued by the defendant that if the complainant wants to sell mints let it furnish a machine into which 5 cents is inserted and when operated a roll of mints drops out, nothing else, and then condemn all other automatic vending machines. Such a view is not only a narrow one, but overrides the constitutional protection afforded inventors and manufacturers and must not prevail. Vigilance in the prosecution of offenders against the law is necessary and very important, and courts will not interfere with the acts of police officers engaged in the lawful exercise of their sworn duty. The corollary of that assertion is the safeguarding against unlawful and arbitrary invasion of property rights of citizens engaged in the prosecution of a lawful business in a lawful manner. The complainant, in the case at bar, seeks no more than to prevent defendant from making *unlawful* seizures and arrests. It does not seek to prevent the defendant from seizing machines other than the Mills *Non-Convertible* Vender, or machines which either are or can be readily converted into gambling devices. It does not seek to have the defendant and his subordinates enjoined from arresting any person who has a gambling device per se, or one that can so readily be converted into such, or for that matter any person who actually exchanges the discs for money or merchandise. It seeks only to prevent defendant from acting beyond the scope of his legal authority. It seems perfectly clear that to grant the relief prayed for would not prevent the defendant from seizing money machines or any other machine illegally operated and arresting any person in possession of such a machine.

Upon all the evidence, I conclude and hold that the complainant is entitled to the relief prayed for in the bill, but in granting the injunction it must be clearly understood that there shall be no further operation of the machines until the case has been decided on the appeal and by the Circuit Court of Appeals and that the injunction applies only to the device described in the bill of complaint, to wit, the Mills *Non-Convertible* Vender. In no other sense is the court to be understood as enjoining the defendant or the police officers of the city of Hartford from seizing any machines which are gambling devices per se or such as are used as gambling devices.

Let the injunction issue in accordance with the tenor of this memorandum. Submit proposed findings of fact and conclusions of law in accordance with the terms of the stipulation within one week. Decree accordingly.