CITY OF MILWAUKEE, Appellant, vs. BURNS, Respondent.

*May 25—June 21, 1937.*

For the appellant there was a brief by *Walter J. Mattison*, city attorney, and *Carl F. Zeidler,* assistant city attorney, and oral argument by *Mr. Zeidler.*

*John C. Fellenz, Jr.,* of Milwaukee, for the respondent.

MARTIN, J. This action is to recover a penalty for violation of section 1069 of the Milwaukee Code of 1914, which section provides:

"No person shall possess, keep, own, operate, use or cause to be kept, operated or used in any room, tent, booth, shed,

tavern, building, inclosure or upon any premises, or part thereof, or in any place within the city of Milwaukee any clock, joker, tape, or slot machine, or other device of any kind or nature whatsoever, upon, in, by or through which money is or may be staked or hazarded, or into which money is or may be played or paid upon chance, or upon the result of the action of such clock, joker, tape or slot machine, or other device, money or other valuable thing is or may be staked, bet, hazarded, won or lost.

"Any person violating any of the provisions of this section shall be punished by a fine of not less than ten dollars nor more than one hundred dollars, or by imprisonment in the House of Correction of Milwaukee County for not less than fifteen nor more than ninety days, or by both such fine and imprisonment; and each and every day on which any person shall operate, keep, own or have in his possession or under his control any such clock, joker, tape or slot machine, or other device in violation of the provisions of this section shall be deemed a separate and distinct offense."

The respondent, on November 7, 1936, operated a tavern at 3143 South Clement avenue in the city of Milwaukee. On that day, he had a pinball machine of the ten-ball "sportsman" variety in his tavern. Respondent admits having this particular machine and two others in his tavern for use on the date in question. He testified that the O. K. Novelty Company owned the machines and put them in his tavern on a commission basis; that he received twenty-five per cent of the cash taken in on the machines, and that the novelty company received seventy-five per cent; that he and the owner of the machine made a settlement once a week. If the machine in question is a gambling device, respondent is guilty of a violation of the ordinance above quoted.

The city, on this appeal, makes three assignments of error:

(1) The court erred in refusing to permit the plaintiff, city of Milwaukee, to call the defendant adversely as a witness.

(2) The court erred in refusing to direct a verdict for the city of Milwaukee because no jury issue was present, as the pinball machine was a gambling device as a matter of law.

(3) The court erred in refusing to grant judgment, notwithstanding the verdict.

The city contends that this is a civil action, and that the rules of practice and procedure in civil cases are applicable to prosecutions for violations of municipal ordinances. Respondent contends it is a criminal action, and that the rules applying to procedure in civil actions do not apply. We will consider the assignments of error collectively.

Under the statutes of this state, actions are of two kinds—civil and criminal (sec. 260.05, Stats.). A criminal action is defined as one prosecuted by the state against a person charged with a public offense, for the punishment thereof. Every other action is a civil action. This is a civil action and the rules of pleading and practice applicable to civil actions apply. *Neenah v. Krueger,* 206 Wis. 473, 475, 240 N. W. 402; *Seely v. Milwaukee,* 212 Wis. 124, 130, 248 N. W. 912; *Milwaukee v. Johnson,* 192 Wis. 585, 588–592, 213 N. W. 335; *De Vries v. Dye,* 222 Wis. 501, 503, 269 N. W. 270. This being a civil action and the rules of practice and procedure in such actions being applicable here, the city had the right to call the defendant adversely as a witness. However, respondent could claim his constitutional right and not testify to anything which might tend to incriminate him. The respondent, as a witness in his own behalf, did testify that at the time and place in question he had this particular pinball machine and two other machines in his tavern; that they were played by patrons of his tavern, and that they were operated on a commission basis with the owner. The city attorney had the opportunity to, and did, fully cross-examine the respondent, so the first assignment of error drops out of the case.

The respondent contends that because the ordinance provides a penalty of fine or imprisonment or both fine and imprisonment, this is a criminal action. In *Milwaukee v. Johnson, supra,* at page 592, the court said:

"Counsel for the city concedes that Milwaukee had no power to pass an ordinance prohibiting gambling which imposed imprisonment as a penalty for the violation of the ordinance. For the purpose of this appeal the court will assume, without deciding that question, that no such power was possessed by the city of Milwaukee. But very clearly the court had the power as a means of enforcing the payment of the fine or forfeiture imposed to direct that the defendant be imprisoned until payment is made, but not to exceed a fixed maximum period of time. This imprisonment is in the nature of an execution against the body of the offender rather than the imposition of imprisonment as a punishment for the violation of the ordinance."

As said in the *Johnson Case,* the provision imposing imprisonment as a penalty for a violation of the ordinance did not invalidate the entire ordinance. This provision is distinct and severable from the rest of the ordinance. The rest of the ordinance presents a complete and consistent plan for the suppression of gambling in the city of Milwaukee. If the imprisonment provision is void, that part of the ordinance drops out of the case.

It is apparent that the action was tried below upon the assumption that in order to make the machine a gambling device, it was necessary to establish that respondent had actually cashed or given a glass of beer in exchange for the chip which the machine gave out. That this was the theory upon which the case was tried is clearly indicated by the following statement in respondent's brief:

"This testimony very clearly shows that the offense consisted of cashing the chip and the only issue involved was whether or not the chip was actually cashed by the defendant. If it was cashed, this chip then became a 'thing of value'

which under such circumstances would make the machine a gambling device."

On the trial, the officer who made the arrest and seized the machine, on his cross-examination by respondent's counsel, testified as follows:

"*Q.* You placed Mr. Burns under arrest after you claimed he cashed the chip? Is that correct? *A.* I placed Mr. Burns under arrest at ten-forty P. M.

"*Q.* After he cashed the chip? *A.* He took the chip and placed it on top of the cash register and went to the other end of the bar, and I sipped just a little of the beer and waited until he came back and then I placed the defendant under arrest.

"*Q.* For cashing the chip. Is that correct? *A.* For redeeming the chip—that is for accepting the chip for merchandise.

"*Q.* And that is why you arrested him? *A.* Yes, sir."

Defendant had testified that he did not give the officer a glass of beer in exchange for one of the chips. Evidently, the case was tried and submitted to the jury upon the theory that whether the machine was a gambling device or not depended on whether defendant had accepted a chip in payment for a glass of beer.

It is not necessary that we describe the mechanism of this pinball machine. It is constructed and operated to appeal to the gambling instinct as do many of the other machines now quite generally in use. The officer testified that he had put six nickels into the machine before he won. It appears that there are various combinations on the machine. One must get a ball into the so-called "skill" hole to win. If one can do this and also make certain other combinations, he wins free play tokens. Defendant testified:

"The average person inserts five or ten cents in the machine. They win the chips and play them back in. *I don't cash a chip in the house. . . .* I don't accept chips for merchandise."

If this be true, if one wins, he gets only a certain number of free plays.

An examination of the machine, which is in court as an exhibit, and the evidence as to its mechanism and operation leave no doubt in the mind of the court that it is a device "into which money is or may be played or paid upon chance, or upon the result of the action of such . . . device." The player has constantly before him the chance that he may win tokens entitling him to from three to twelve free plays. Clearly, this device comes within the express prohibition of the ordinance. Chance is the dominating element that determines the result of the game. What is said in *Milwaukee v. Johnson, supra,* although it involves a different type of machine, is applicable to the machine in question. The court said:

"The machine makes an appeal to the gambling instinct because the player has constantly before him the chance that the next play will assure him of the right on the next succeeding play to secure from two to twenty trade checks. Were it not for this appeal to the gambling instinct these machines which attempt to adhere to the letter of the law while violating its spirit would never have been placed upon the market."

This particular type of machine was involved in *Shapiro v. Moss,* 245 App. Div. 835, 281 N. Y. Supp. 72. There the court said:

"We are of the opinion that the element of chance in the operation of the machine now before us far outweighs that of skill. 'The test of the character of the game is not whether it contains an element of chance or an element of skill, but which is the dominating element that determines the result of the game.' *People ex rel. Ellison v. Lavin,* 179 N. Y. 164, 170, 71 N. E. 753, 755, 66 L. R. A. 601, 1 Ann. Cas. 165."

The court further said: "This game, which relies for its popularity upon that gambling spirit innate in so many people and which from common knowledge is only a money-making

device for the owner and at the expense of the player, should not be looked upon with favor by courts or those public officers who in any way exercise control over them. In our opinion, the machine was designed primarily for gambling purposes, and, therefore, the commissioner of licenses exercised a proper discretion in refusing the license in question."

On the evidence, there was no issue for the jury. A verdict finding the defendant guilty of a violation of the ordinance as charged in the complaint should have been directed. Failing in that, the court should have entered such judgment notwithstanding the verdict. Defendant's guilt is established by his own testimony. Whether he redeemed the chips which the machine gave out either in cash or any form of merchandise is wholly immaterial. In the first instance, the person playing the machine had to insert a nickel for which he received ten balls. If, upon playing the balls, he should happen to win, he received one or more chips which could be used to play the machine further in place of the nickels, so that in playing the machine, the chip had a value which would constitute it a gambling device.

*By the Court.*—Judgment reversed; and cause remanded with directions to set aside the jury verdict finding the defendant not guilty; that judgment be entered adjudging the defendant guilty, and imposing such penalty as the court may deem proper and just.