STATE OF IOWA, Appellant, v. R. L. WILEY et al., Appellees.

No. 45881.

MAY 12, 1942.

REHEARING DENIED OCTOBER 2, 1942.

John M. Rankin, Attorney General, Jens Grothe, Assistant Attorney General, Francis J. Kuble, County Attorney, and James P. Irish, Assistant County Attorney, for appellant.

Louis Ansher and J. R. McManus, both of Des Moines, for appellees.

OLIVER, J.— ■ The grand jury returned the following indictment against the defendants herein, to wit:

"The Grand Jury of the County of Polk, in the State of Iowa, accuse R. L. Wiley and Joseph Epstein of Illegal Possession of Gambling Devices as defined in Section 13210 of the 1939 Code of Iowa, and charge that R. L. Wiley and Joseph Epstein had kept or held in their possession or under their control certain devices commonly known as Pin Ball machines, which op-

erate by means of the insertion into the slot provided on said Pin Ball Machine of a five cent coin which then allows the person playing said Pin Ball Machine by means of a plunger on said Pin Ball Machine and the manipulation of a ball, or balls, in said Pin Ball Machine to attain or seek a certain score which, if attained by the player, entitles the player as shown on the Pin Ball Machine to additional games free, in violation of Section 13210 of the 1939 Code of Iowa.''

Defendants filed a demurrer to the indictment, the first three grounds of which were as follows:

''1. That the indictment fails to charge a crime under the statutes of Iowa. 2. That the facts charged do not constitute an offense punishable under any of the statutes of Iowa. 3. That the facts charged, if true, would constitute a complete defense and bar to prosecution.''

The court sustained the demurrer and dismissed the case. The State appeals. The principal question presented by the appeal is whether or not the possession by defendants of the pinball machines described in the indictment is prohibited by the provisions of section 13210, Code of Iowa, 1939. That section provides:

''13210 Possession of gambling devices prohibited. No one shall, in any manner or for any purpose whatever, except under proceeding to destroy the same, have, keep, or hold in possession or control any roulette wheel, klondyke table, poker table, punch board, faro, or keno layouts *or any other machines used for gambling, or any slot machine or device with an element of chance attending such operation.''* (Italics supplied.)

In 1937 the language above italicized was added to the statute. The Iowa cases cited herein were decided prior to the time the statute was amended. They involve mint-vending machines. The player drops a nickel in the slot and spins the mechanism by pulling a lever. The machine delivers a package of mints and at times also delivers certain metal discs, or printed slips upon which different sayings are printed. When these discs or slips are exchangeable for merchandise the machines are almost universally condemned by the courts as gam-

bling devices, despite the ingenuity of inventors to so construct them as to cloak their real character. State v. Ellis, 200 Iowa 1228, 206 N. W. 105; State v. Doe, 221 Iowa 1, 263 N. W. 529.

State ex rel. Manchester v. Marvin, 211 Iowa 462, 464, 233 N. W. 486, is a leading Iowa case, frequently cited by other courts. That machine, in return for the nickel, delivered the mints, and in addition, at times determined by chance, delivered various numbers of metal discs with which the machine could be replayed. When played with discs the machine did not deliver mints, but did, at uncertain times, release additional discs. Each time the machine was played a set of reels was spun. On these were printed certain phrases, which, when the reels stopped, formed sentences purporting to give humorous advice to the player. The discs were marked ''good for amusement only'' and were not exchangeable for cash or anything other than replays of the machine. The court said:

''If it were conceded that the disc had no value, yet the nickel which it induced from the patron did have value. The use of the discs had a manifest purpose. Such purpose was to stimulate the expectation of the buying patron that he might receive something more than a package of mints. The only apparent economic reason for their use was that they would induce a larger deposit of nickels in the slot than would otherwise ensue. Among the patrons of the machine, some, if not many, of them might prefer the feature of amusement, rather than the package of mints. If these discs were made 'good' for admission to a movie or other place of amusement, their character as a gambling device would be readily recognized. Something akin thereto was their actual function as used. The 'movie' was furnished instanter in response to the call of the disc. It must be held, therefore, that the machine in question was a gambling device, within the meaning of the statute.''

Some similar holdings from other jurisdictions, in cases involving mint-vending machines identical to or substantially the same as the machine in State ex rel. Manchester v. Marvin, supra, are, Howell v. State, 184 Ark. 109, 40 S. W. 2d 782, citing State ex rel. Manchester v. Marvin; Painter v. State, 163 Tenn. 627, 45 S. W. 2d 46, 81 A. L. R. 173, citing

State ex rel. Manchester v. Marvin; Heartley v. State, 178 Tenn. 254, 157 S. W. 2d 1; Jenner v. State, 173 Ga. 86, 159 S. E. 564; State v. Mint Vending Machine, 85 N. H. 22, 154 A. 224; State v. Baitler, 131 Me. 285, 161 A. 671, citing State ex rel. Manchester v. Marvin; Snyder v. City of Alliance, 41 Ohio App. 48, 179 N. E. 426; Gaither v. Cate, 156 Md. 254, 144 A. 239; Colbert v. Superior Confection Co., 154 Okla. 28, 6 P. 2d 791; Ross v. Goodwin, D. C. N. H., 40 F. 2d 535; Green v. Hart, D. C. Conn., 41 F. 2d 855; White v. Hesse, 60 App. D. C. 106, 48 F. 2d 1018; Boynton v. Ellis, 10 Cir., Kan., 57 F. 2d 665; Boynton v. Mills Novelty Co., 10 Cir., Kan., 60 F. 2d 125.

In Jennings & Co. v. Maestri, 22 F. Supp. 980, 5 Cir., La., 97 F. 2d 679, 681, the statute prohibited the keeping of "a slot machine or similar mechanical device" operated for gambling. It was contended the machine was a legal vender and not a gambling device in violation of the statute. The machines were held illegal "both because they could be operated as gambling devices, paying off in money or valuable merchandise, and because, by the operation of the laws of chance, they delivered things of value, to wit, tokens, the playing of which afforded amusement to those thus inclined." The footnote cites State ex rel. Manchester v. Marvin, supra. See, also, 24 Am. Jur. 422, and annotations in 81 A. L. R. 177.

There are some cases to the contrary, among which are, Commonwealth v. Kling, 140 Pa. Super. 68, 13 A. 2d 104; Mills Novelty Co. v. Farrell, 3 F. Supp. 555, 2 Cir., Conn., 64 F. 2d 476; Mills Novelty Co. v. Bolan, 3 F. Supp. 968, Mills Novelty Co. v. O'Ryan, 2 Cir., N. Y., 68 F. 2d 1009; Davies v. Mills Novelty Co., 8 Cir., Neb., 70 F. 2d 424.

However, the Supreme Court of the United States granted certiorari in the O'Ryan case (New York), 292 U. S. 615, 54 S. Ct. 629, 78 L. Ed. 1474, and after the writ was granted, New York having adopted legislation prohibiting free-game machines, the case was reversed and ordered dismissed without prejudice. 292 U. S. 609, 54 S. Ct. 779, 78 L. Ed. 1469.

To recapitulate, in State ex rel. Manchester v. Marvin, supra, and in the majority of decisions of other courts of this country, mint-vending machines, which by chance occasionally deliver discs to the player, have been held to be gambling de-

vices even though the discs are exchangeable for nothing other than additional whirls of the machine. The basis for such holdings is that free plays are things of value.

If free plays of a mint-vending machine are things of value, it seems logical that free games upon a device such as those described in the indictment in this case are likewise things of value. Various authorities sustain this conclusion. As a matter of fact, the play of the mint-vending machine presumably is merely accessory to the purchase of mints. The coin inserted in the pinball machine presumably is paid solely for the amusement of operating the machine. Thus, the coin measures the value of a game. Therefore, a free game upon the latter machine has a definite fixed value. If one game is worth a nickel, it is clear that additional games are things of value. And the rule is the same whether the machine emits discs with which it can be replayed or works automatically as in the case at bar.

The following cases concern machines or devices of the same general type as those in this case. In Kraus v. City of Cleveland, 135 Ohio St. 43, 46, 19 N. E. 2d 159, 160, this language appears:

"Amusement is a thing of value. Were it not so, it would not be commercialized. * * * Since amusement has value, and added amusement has additional value, and since it is subject to be procured by chance without the payment of additional consideration therefor, there is involved in the game three elements of gambling, namely, chance, price and a prize." State ex rel. Manchester v. Marvin, supra, is cited.

State v. Abbott, 218 N. C. 470, 478, 11 S. E. 2d 539, 544, states:

"Lest it be attempted to distinguish these cases because the slot machines therein considered emitted token or checks, whereas it does not appear that the one in the instant case did, it should be pointed out that these decisions hold that the thing played for and received is actually the right to operate the machine an additional time or times, and not the token which represents that value." State ex rel. Manchester v. Marvin, supra, is cited as a supporting authority.

Alexander v. Martin, 192 S. C. 176, 183, 6 S. E. 2d 20, 23,

involved an automatic free-game pinball machine with which the court compared the disc-emitting machines as follows:

"The tokens were but symbols evidencing the right acquired by the customer who drew them. The thing actually received was the right to operate the machine without having to deposit an additional coin for whatever amusement the playing of the game would afford. It matters little whether this right was evidenced by tokens or by an automatic recorded score. * * * 'This added amount of amusement * * * is a thing of value.'" Citing State ex rel. Manchester v. Marvin, supra.

There are like holdings in Middlemas v. Strutz, 71 N. D. 186, 299 N. W. 589; City of Milwaukee v. Burns, 225 Wis. 296, 274 N. W. 273; State v. Langford, Tex. Civ. App., 144 S. W. 2d 448; Broaddus v. State, 141 Tex. Cr. 512, 150 S. W. 2d 247; Henry v. Kuney, 280 Mich. 188, 273 N. W. 442; People v. Gravenhorst, ——Misc.——, 32 N. Y. S. 2d 760, 765, 775, citing State ex rel. Manchester v. Marvin, supra.

In Couch v. State, 71 Okla. Cr. App. 223, 231, 110 P. 2d 613, 617, it is stated:

" 'If the act in question applied only to things of value, we think that the amusement held out as an inducement is a thing of value sufficient to bring these machines within the plain provisions of the act. We are of the opinion that the act is applicable without regard to the value of the things held out as an inducement to the playing of the machine.' "

State ex rel. Green v. One 5¢ Fifth Inning Base Ball Machine, 241 Ala. 455, 3 So. 2d 27. The act prohibits any machine, mechanical device, etc., which is operated or can be operated as a game of chance. The court held it applied to a pinball machine regardless as to whether there was a pay-off or not.

A case which may be interpreted as holding that a free game upon a device of this nature is not a thing of value is Commonwealth v. Mihalow, 142 Pa. Super. 433, 16 A. 2d 656; but see Urban's Appeal, 148 Pa. Super. 101, 24 A. 2d 756.

State ex rel. Manchester v. Marvin, supra, is logical and sound and enunciates the rule of the great majority of modern

decisions of courts of this country, many of which expressly follow it or cite it with approval. No good reason appears for departing from the doctrine there enunciated. Accordingly, we hold free games upon the devices here in question to be things of value.

The device in the case at bar is called a pinball machine. The decisions disclose various types of similar slot machines or devices, most of which give the player some mechanical control over the original direction or impetus of the object or ball and present various mechanical obstacles or obstructions which cause the result of the play to depend largely upon chance. Various mechanical forms and ideas are ingeniously employed in different types of the devices. Some of them are in the form of mechanical baseball games, bowling games, or marble games. They have been called bagatelle, pigeonhole, magic roll, skill roll, world series, tenpins, and various other names. But the courts have, in general, looked behind the name and style of the device to ascertain its true character.

The amendment to the Iowa statute prohibits "any other machines used for gambling, or any slot machine or device with an element of chance attending such operation." It is not unreasonable to assume that the employment of this broad language by the legislature was deliberate. Such language makes the legislation applicable to all devices of the general character intended to be prohibited and thus tends to prevent evasion of the statute by changes in the names and forms of such devices, however ingenious these changes may be. Moreover, the use of the general language avoids any substantial contention that the statute, by listing a specific style of device, such as pinball machines, has thereby excluded all other devices of the same character which may differ in style or name.

It is frequently contended that devices of the kind described in the indictment are not illegal because they are games of skill rather than games of chance. In general, "The test of the character of the game is not whether it contains an element of chance or an element of skill, but which of these is the dominating element that determines the result of the game." 24 Am. Jur. 410, section 18. However, the 1937 amendment to Code section 13210 explicitly prohibits "any slot machine or device with

*an element* of chance.'' Therefore, the test of dominating element is not here applicable. In the language of Times Amusement Corp. v. Moss, 160 Misc. 930, 935, 290 N. Y. S. 794, 799, ''this section has completely abandoned the rule of dominant element as far as slot machines are concerned'' and has substituted the words with ''an element'' of chance.

And, even in the absence of such statutory provisions, most authorities hold devices of this kind to be games of chance. In State v. Coats, 158 Or. 122, 130, 74 P. 2d 1102, 1105, it was said:

''To say that the operation of pin ball machines or slot machines involves any substantial degree of judgment or skill severely strains the credulity of any reasonable-minded person. Such machines are constructed to win and they do win. In a game involving skill or judgment, the player has a fair opportunity to win. Such opportunity is not afforded the player who 'bucks' a slot machine or a pin ball machine. No judgment or skill which the player may exercise has any appreciable effect upon the result. It is, to all intents and purposes, a matter of chance.''

The decision points out that the player can only regulate the starting speed of the ball.

''He cannot aim at anything, as in a game of billiards, or baseball or golf, but is absolutely limited by the mechanics of the device to propelling the ball along the so-called channel to the upper end of the table.'' State v. Coats, 158 Or. 122, 132, 74 P. 2d 1102.

State ex rel. Dussault v. Kilburn, 111 Mont. 400, 405, 109 P. 2d 1113, 1115, 135 A. L. R. 99, quotes from State v. Coats, supra, and states:

'' 'While * * * by long practice a certain amount of skill may be developed, yet we must view the operation and result of the machine as it is played by the mass of the patronizing public, with whom it is purely a game of chance.' ''

State ex rel. Green v. One 5¢ Fifth Inning Base Ball Machine, 241 Ala. 455, 458, 3 So. 2d 27, 28, states that, conceding a player, by careful practice, might develop some degree of skill,

yet "any such skill would be so thwarted by hazard that he could not, regardless of his skill, determine the outcome of the game. The element of chance, to our minds, very clearly predominates, and the machine represents a game of chance."

Alexander v. Hunnicut, 196 S. C. 364, 369, 13 S. E. 2d 630, 632, quoting from Alexander v. Martin, 192 S. C. 176, 182, 6 S. E. 2d 20, 23:

" 'While it is true that the player receives the same number of balls for each coin deposited, he may or may not make the same score for each coin's worth of balls played. *This in itself is an element or contingency, dependent upon chance, and would make of the machine an unlawful device,* * * * .' ''

Hunter v. Mayor, 128 N. J. L. 164, 24 A. 2d 553, 556, discusses tests of gaming devices applied by various courts, and concludes that under each test the machines are games of chance.

" * * * we * * * decide * * * that a pinball game is a 'game of chance'; that pinball machines are gambling devices; * * * .''

Also holding such machines games of chance are Commonwealth v. Bowman, 267 Ky. 602, 102 S. W. 2d 382; City of Milwaukee v. Burns, 225 Wis. 296, 274 N. W. 273; State v. Abbott, 218 N. C. 470, 11 S. E. 2d 539; Hoke v. Lawson, 175 Md. 246, 1 A. 2d 77.

An apparently contrary case is Commonwealth v. Mihalow, 142 Pa. Sup. 433, 16 A. 2d 656. But Urban's Appeal, 148 Pa. Sup. 101, 109, 24 A. 2d 756, 760, distinguishes that case, and states:

"The player has no control over the course the ball may take; its movements and stopping place are entirely matters of pure chance."

In Stanley v. State, 194 Ark. 483, 107 S. W. 2d 532, 533, the court quoted from Steed v. State, 189 Ark. 389, 390, 72 S. W. 2d 542, 543:

" 'We might add that they are gambling devices per se because the only reasonable and profitable use to which they may be put is use in a game of chance.' ''

In 135 A. L. R. 149, is an extensive brief upon this proposition. The author says slot machines commonly referred to as pinball, marble, or bagatelle game machines, where a prize is given for making a designated score etc., have generally been held to be for playing games of chance as that phrase is used in the popular sense to mean a game in which the result depends upon chance as distinguished from certainty or skill. Perhaps it should be noted that in England, where the "pure chance" doctrine as applied to lotteries, not followed in this country, appears still to prevail (see 34 Am. Jur. 649 and 656), some slot-machine game devices have been held not to be games of chance. See annotation in 60 A. L. R. 343; 12 Ann. Cas. 321, note, and State v. Coats, 158 Or. 122, 138, 74 P. 2d 1102, 1108.

Obviously, pinball machines may not properly be compared to games of skill such as bowling or baseball. Implements and instruments used in games of skill are usually manually controlled. They may be likened to simple tools in the hands of the player, with which the results obtained, while dependent in part upon chance, are essentially based upon skill. On the contrary, these slot machines are mechanically operated devices so constructed that skill is thwarted by hazard and chance is the dominating element. However, as heretofore stated, in this state it is no longer necessary that chance be the dominating element. The statute now prohibits the possession of any slot machine or device with *an element* of chance.

The evils attendant upon the operation of devices of the character of those described in the indictment are too well known to require discussion. In some jurisdictions statutes have been held to prohibit such devices, regardless of whether or not they are kept or operated for gambling purposes. And such statutes have been sustained by the courts.

We need not determine whether or not the statute here involved should be interpreted as forbidding the possession of slot machines or devices of this general character which do not have the free-game feature. This appeal involves only the possession of the devices described in the indictment. To prohibit such possession was within the power of the legislature. Under the circumstances, the province of the court is limited to

the interpretation of such legislation. We are satisfied the machines described in the indictment are gambling devices the possession of which is prohibited by Code section 13210.

The demurrer to the indictment presents certain legal propositions other than the ones herein discussed. Those other legal propositions were decided adversely to the defendants in our recent decision in State v. Cowen, 231 Iowa 1117, 3 N. W. 2d 176. Upon those points this decision is ruled by that case. It follows that the indictment was not vulnerable to demurrer upon any of the grounds asserted. Therefore, the trial court erred in sustaining the demurrer and dismissing the case. The ruling upon the demurrer is reversed, but under the statute the case may not be remanded.—Reversed.

BLISS, C. J., and GARFIELD, WENNERSTRUM, and HALE, JJ., concur.

MILLER, STIGER, and SAGER, JJ., dissent.

MILLER, J. (dissenting)—I am unable to agree with the foregoing opinion and respectfully dissent.

One of the most revealing paragraphs of the majority opinion is that which asserts that "obviously, pinball machines may not properly be compared to games of skill such as bowling or baseball" which are essentially based upon skill rather than chance, because pinball machines are "so constructed that skill is thwarted by hazard and chance is the dominating element." The majority then state that it is no longer necessary that chance be the dominating element and that the possession of any slot machine or device with an element of chance is prohibited. It is only necessary to separate the words "slot machine" from the phrase "device with an element of chance," and, following the majority opinion to its logical conclusion, a bowling alley is a gambling device because it is a "device with an element of chance." A game of bowling is customarily played in ten "frames." Each player ordinarily secures two balls for each frame. However, if a player were skillful enough and lucky enough to bowl a perfect game, that is make a "strike" with every ball he plays, instead of 20 balls for the game, he would only have the privilege of playing twelve. On

the other hand, if he made no strikes whatever until the last frame, he would have 21 balls to play. While bowling is primarily a game of skill, it cannot be denied that there is an element of chance in it, and this element of chance may determine how many balls the player can play for each game. Accordingly, under the reasoning of the majority opinion, it is perfectly logical to say that a bowling alley is a gambling device.

Were we to so hold, then, under the holding of this court in the case of State v. Cowen, 231 Iowa 1117, 3 N. W. 2d 176, which the majority opinion follows herein, the bowling alley could be confiscated and destroyed without compensation to the proprietor, the proprietor would also be guilty of a crime for having the same in his possession, would be guilty of operating a gambling house, and every bowler would be guilty of the crime of gambling. I cannot conceive that the legislature intended any such result.

While the constitutional question of depriving one of his property without due process of law is not specifically raised in this case, the question is one which should be given consideration. Under the majority opinion, one who permits the operation upon his premises of a ''device with an element of chance,'' may lose that property on the theory that it is contraband. I do not think that any such drastic penalty should be inflicted unless the device is actually a gambling device. To be such, it must have something more than an element of chance; otherwise, many devices obviously legitimate might be seized and destroyed without compensation to the owners thereof.

I am persuaded that the court, in the case of Mills Novelty Co. v. Farrell, 2 Cir., Conn., 64 F. 2d 476, 478, announced a sound rule when it stated:

''One may not suppose that a person desiring to gamble would put up money in the hope of obtaining tokens which can be used only to produce insignificant humorous sayings. The amusement feature of the machine does not make the machine a gambling device. It arouses interest and perhaps attracts customers to the machine in much the same way as advertising would, but this is lawful.''

The court was dealing with the same proposition that con-

fronted us in State ex rel. Manchester v. Marvin, relied upon by the majority. Such also was the case of Davies v. Mills Novelty Co., 8 Cir., Neb., 70 F. 2d 424, 426, wherein the language of the Farrell case was quoted with approval, and the court adds:

"Under the evidence and the findings of the lower court, these machines are lacking in the essential elements necessary to make of them gambling devices or gambling machines. There is no element of gain or loss, financial or otherwise, involved in the transaction."

Along the same lines is the case of Commonwealth v. Mihalow, 142 Pa. Sup. 433, 439, 16 A. 2d 656, 659. In discussing a pinball machine, the court states as follows:

"But a machine upon which games are played for amusement, although involving an element of chance, is not ipso facto a gambling device or a gambling machine. See In re Mapakarakes, supra; People v. One Slot Machine in Parkside Recreation Parlor, 303 Ill. App. 337, 25 N. E. 2d 139; Com. v. Kling, 140· Pa. Superior Ct. 68, 13 A. 2d 104."

As I see it, something more than an element of chance is necessary to render a device a gambling machine. Practically every legitimate business has some element of chance in connection with its operation. The presence of that factor does not render the enterprise unlawful. Neither is innocent recreation or amusement, such as bowling, rendered illegal because something of value, such as an extra ball to be played, may be gained as the result of chance. As pointed out by this court in the case of State v. Hundling, 220 Iowa 1369, 1371, 264 N. W. 608, 609, 103 A. L. R. 861, the evil which the state condemns in a gambling enterprise is that "it arouses the gambling spirit and leads people to hazard their substance on a mere chance." I can see nothing about the pinball machines described by the indictment herein that would arouse the gambling spirit and lead people to hazard their substance on the mere chance of winning a prize. It seems to me that the amusement factor predominates the machine described by the indictment herein. The mere fact that there is an element of chance incident to its

operation is not alone sufficient to render the property contraband, incapable of protection against seizure, and to brand as criminals the one who operates it and the proprietor on whose premises it is situated. It seems to me that the legalistic reasoning of the majority opinion and the cases upon which it relies carry the court far beyond reasonable interpretation of the legislative intent and commit this court to a doctrine which might place in jeopardy many enterprises which, under any rational view of the law, should be considered proper and legitimate. I would affirm this case.

STIGER and SAGER, JJ., join in this dissent.