Harry Baedaro, doing business as Bill's Cafe, appellee,
v. Harold P. Caldwell et al., appellants.

56 N. W. 2d 706

Filed January 23, 1953. No. 33212.

*Clarence S. Beck,* Attorney General, *Dean G. Kratz,
Edward F. Fogarty,* and *Eugene F. Fitzgerald,* for appellants.

*White, Lipp & Simon,* for appellee.

Heard before Simmons, C. J., Carter, Messmore, Chappell, Wenke, and Boslaugh, JJ.

Messmore, J.

The plaintiff Harry Baedaro brought this action in the district court for Douglas County for the purpose of obtaining a declaratory judgment declaring the five-ball pinball machine installed in his place of business is not a gambling device within the meaning of section 28-945, R. R. S. 1943, and for an injunction to prohibit the defendants, who are law enforcing officers, from arresting him, confiscating the pinball machine, or interfering with its operation and use. Trial was had. The district court found that there was a justifiable controversy between the plaintiff and defendants and the case was a proper one for declaratory judgment; denied the plaintiff's prayer for an injunction; found that a

coin-operated five-ball pinball machine of the type and character of the machine in question was not adapted, devised, or designed for the purpose of playing any game of chance for money or property or for betting or gambling, and that such machine was not per se a gambling device; and found that the extension of playing time or the giving of additional free game or games achieved by the player by manual operation of the machine in acquiring a predetermined score, where such extension of playing time is not exchanged for money or property, did not constitute money or property and was not in violation of the criminal statutes of Nebraska, and particularly section 28-945, R. R. S. 1943. The defendants filed motions for new trial which were overruled. Defendants perfected appeal to this court.

The principal assignments of error predicated by the appellants and determinative of this appeal may be summarized as follows: (1) That the district court erred in declaring the pinball machine in controversy is not per se a gambling device; (2) that the district court erred in declaring the extension of playing time secured by a player by manual operation of the machine in obtaining a predetermined score does not constitute money or property and is not violative of the criminal statutes of this state; and (3) that the judgment of the district court is contrary to the law and the evidence.

The record discloses that the appellee operates a restaurant in the city of Omaha. The five-ball pinball machine in controversy is installed in his place of business. This pinball game may be briefly described as follows: It is a mechanically modified game of bagatelle operated under a combination of mechanical, electrical, and manual devices, and consists of a cabinet about 3 feet high with a sloping surface 2 feet by 4 feet on which are installed a number of scoring holes or receptacles and an arrangement of bumpers and obstacles. The playing surface is encased by a glass-

topped cover. There is a spring-operated catapult by the use of which a steel ball or marble is propelled upon the playing surface. At the back of the playing surface is a glass-covered scoring board. Each of the holes, receptacles, bumpers, and obstacles is electrified so that contact with the steel ball registers a score, the amount of the score varying. The object of the game is for the player to cause the steel ball to make contact with as many obstacles as possible, and particularly those which yield the highest score. To play the machine a person inserts a nickel in a coin-receiving device which releases five steel balls or marbles for playing. By means of a manually-operated lever the player causes one ball at a time to be placed in position before the catapult. The player propels the ball by pulling back the spring-powered catapult discharging the ball onto the playing surface. When the player has thus discharged successively each of the five balls onto the playing surface the machine locks and his right to play for the nickel deposited is ended unless the player achieves a predetermined score. In this event the player may continue to play until having failed to achieve the predetermined score. The machine then automatically locks. There are certain other attachments and equipment on the machine which will be referred to and discussed later in the opinion.

It was stipulated that the appellee has paid all taxes of every kind and nature required to be paid by him with reference to the machine. Also, it was stipulated that in the event the machine is used or operated by a player whereby the player may receive an additional free game, or games, by achieving a predetermined score, the defendant law enforcing officers will prosecute the appellee under section 28-945, R. R. S. 1943; and that the appellee intends and desires to offer the playing of the game as recreation, amusement, and diversion for his patrons and invitees.

The legality of a five-ball pinball machine of the type

and character being considered here has never been determined in Nebraska.

In determining this appeal the following are applicable: The Constitution of Nebraska provides that the Legislature shall not authorize any game of chance, lottery, or gift enterprise. See Art. III, § 24, Constitution.

Section 28-945, R. R. S. 1943, provides in part: "Whoever shall set up or keep any * * * gambling device or gaming machine of any kind or description, under any denomination or name whatsoever, adapted, devised and designed for the purpose of playing any game of chance for money or property * * *" shall be punished as provided for in said section of the statute.

The first question to determine is whether or not the pinball machine involved in this case, as heretofore described, is a game of chance prohibited by the Constitution of the state and condemned by section 28-945, R. R. S. 1943.

The appellee contends the machine is designed so that a successful player must use up his right to continuing play, and said right cannot be canceled out by any device but must be exhausted in play. In this connection the machine is not equipped with a knock-off button which is a device that registers the number of games that were won by a player but which were not actually played off. In addition, the machine is equipped with two flippers at the bottom portion of the machine controlled by buttons placed on the side of the machine. The machine contains a tilt device which locks the machine if the player employs too much manual abuse.

Further, the appellee contends, and evidence is introduced to the effect, that a player, by the exercise of manual manipulation and the use of the flipper, is able to control the action of the ball in that it may be deflected, retarded, or repelled toward the scoring objectives as it rolls in gravity toward the lower portion of the playing surface; that the player may influence the course of the ball by shaking or moving the machine;

that as the ball leaves the top of the playing surface in its course to the bottom of the playing surface, the player has another opportunity to control the ball and to force it back onto the upper portion of the playing surface by means of the flippers; and that by the use of the flippers, referred to as "flipper controls," the ball is caused to score the maximum which the player's skill can accomplish.

Contra, the evidence shows the player is unable to determine from the degree of force applied to the catapult in what direction the ball will roll down the inclined board, is unable to shoot the ball into any lane he chooses, and is unable by the use of the catapult to direct the ball toward the flipper device. When the ball reaches the playing surface it may go in any direction, and cannot be controlled. All five balls may be played at once, completely uncontrolled. The acquiring of a free game, or games, is made in the event the player gets a high enough score, which is determined by the balls, over which the player has very little control, striking certain bumpers and dropping into certain holes. The machine was played in open court by a player qualified as an expert and by a novice. The result was that the expert received varying scores on three separate occasions, and a lower score than that obtained by the novice.

It is apparent from the evidence that the player cannot direct the ball by physical manipulation, nor can the ball be directed by the use of the catapult. When free games are obtained, it is through the element of chance.

The test of the character of the game is not whether it contains an element of chance or an element of skill, but which of these is the dominating element that determines the result of the game. See 24 Am. Jur., Gaming and Prize Contests, § 18, p. 410. See, also, Annotation, 135 A. L. R. 112; City of Milwaukee v. Burns, 225 Wis. 296, 274 N. W. 273.

A game of chance is one in which the result as to success or failure depends less on the skill and experience of the player than on purely fortuitous or accidental circumstances incidental to the game or the manner of playing it or the device or apparatus with which it is played, but not under the control of the player. See 38 C. J. S., Gaming, § 1, p. 35.

It is true that with practice a player may develop some skill which would aid him in bringing about the successful result of obtaining the right to a replay; but even with such practiced manipulator the chances of success in the playing of the five balls allotted to him are few and far between, and the opportunity for skill to have any appreciable effect on the result of the play is almost completely overshadowed by the element of chance. See, Steely v. Commonwealth, 291 Ky. 554, 164 S. W. 2d 977; Commonwealth v. Bowman, 267 Ky. 602, 102 S. W. 2d 382; Commonwealth v. Miller, 246 Ky. 83, 54 S. W. 2d 632; State v. Coats, 158 Or. 122, 74 P. 2d 1102; Alexander v. Hunnicutt, 196 S. C. 364, 13 S. E. 2d 630; Hunter v. Mayor, 128 N. J. Law 164, 24 A. 2d 553; State v. Abbott, 218 N. C. 470, 11 S. E. 2d 539; Hoke v. Lawson, 175 Md. 246, 1 A. 2d 77.

As stated in State ex rel. Dussault v. Kilburn, 111 Mont. 400, 109 P. 2d 1113, 135 A. L. R. 99: "While the evidence shows that by long practice a certain amount of skill may be developed, yet we must view the operation and result of the machine as it is played by the mass of the patronizing public, with whom it is purely a game of chance."

The language contained in Article III, section 24, of the Constitution is clear, explicit, and unambiguous that the Legislature shall not authorize any game of chance. Section 28-945, R. R. S. 1943, conforms to the constitutional provision in banning any game of chance in this state. We conclude that under the evidence and the authorities cited the pinball machine in the instant case is a game of chance.

Is a pinball machine or bagatelle machine which is coin-operated and which automatically gives the successful player free plays on the machine, depending on the score he makes, a gambling device?

The evidence shows that the machine here considered has very little play when the play is one game for a nickel deposited. However, the chance to obtain a predetermined high score by virtue of which the player may win one or more free games is the inducement to play the machine, and players are allured or enticed to play it for that reason.

Anything affording necessary lure to indulge the gambling instinct and appeal to the gambling propensities of man is a gambling device. See State ex rel. Hunter v. Omaha Motion Picture Exhibitors Assn., 139 Neb. 312, 297 N. W. 547.

A gambling device is any instrument adapted and designed to play any game of chance for money or property. See, State v. Doe, 242 Iowa 458, 46 N. W. 2d 541; State v. Wiley, 232 Iowa 443, 3 N. W. 2d 620; Oatman v. Davidson, 310 Mich. 57, 16 N. W. 2d 665; State v. Jaskie, 245 Wis. 398, 14 N. W. 2d 148.

We conclude under the evidence and the authorities heretofore cited that the pinball machine here in issue is a gambling device.

The question is raised as to whether or not the five-ball pinball machine here considered is a game designed for the purpose of playing for money or property within the purview of section 28-945, R. R. S. 1943. Previously in this opinion we have cited cases from a number of jurisdictions that have passed upon the legality of machines of the type and character as in the instant case and machines analogous to the pinball machine. For the most part jurisdictions passing upon the issues as appear in the instant case have, under their respective statutes, banned the machines. The statutes of the various states differ in the language used, in some instances the play of the machine is for money or a thing of value,

or similar terms, or, as in section 28-945, R. R. S. 1943, "for money or property."

The appellee's contention is that the words "money or property" as used in section 28-945, R. R. S. 1943, have no application to a machine such as the one at bar, for the reason that there is no play for money, and free games do not constitute property. In this connection we believe the following applicable to the instant case: A predecessor to the pinball machine was what is known as a mint-vending machine. In a majority of the decisions from foreign jurisdictions mint-vending machines, which by chance occasionally delivered discs to the player, have been held to be a gambling device, even though the discs were exchanged for nothing other than additional whirls of the machine. The basis of such holding is that free games are things of value. See, State ex rel. Manchester v. Marvin, 211 Iowa 462, 233 N. W. 486; Howell v. State, 184 Ark. 109, 40 S. W. 2d 782; Painter v. State, 163 Tenn. 627, 45 S. W. 2d 46, 81 A. L. R. 173; Jenner v. State, 173 Ga. 86, 159 S. E. 564; State v. Mint Vending Machine, 85 N. H. 22, 154 A. 224. There are many other cases to the same effect which we deem unnecessary to cite. It seems reasonable, if free plays of the mint-vending machine are things of value, that free games upon a device such as described in the instant case are likewise things of value. If one game is worth a nickel, it is clear that additional games are things of value, and the rule is the same whether the machine emits discs with which it can be replayed, or works automatically as in the instant case. See State v. Wiley, *supra.*

In Kraus v. City of Cleveland, 135 Ohio St. 43, 19 N. E. 2d 159, this language appears: "Amusement is a thing of value. Were it not so, it would not be commercialized. * * * Since amusement has value, and added amusement has additional value, and since it is subject to be procured by chance without the payment of additional consideration therefor, there is involved in the game three ele-

ments of gambling, namely, chance, price and a prize." See, also, Couch v. State, 71 Okl. Cr. 223, 110 P. 2d 613; State ex rel. Green v. One 5¢ Fifth Inning Base Ball Machine, 241 Ala. 455, 3 S. 2d 27.

In any event, the obligation on our part is to interpret section 28-945, R. R. S. 1943, and, from the language contained therein, to discern whether or not the machine in issue comes within the statute and should, if it does, be prohibited insofar as the free games are allowed the player in obtaining a predetermined score.

It must be remembered that the dominant intention of the Legislature in enacting the gambling statutes was for the purpose of eliminating gambling devices. As previously stated, Article III, section 24, of our Constitution prohibits any game of chance. This means that the machine is prohibited in any event if it is a game of chance no matter what is given for the play. The use of the word "property" in section 28-945, R. R. S. 1943, when considered and construed with the constitutional provision means anything of value. The free games obtained in the manner heretofore discussed would then constitute property within the contemplation of the constitutional provision and section 28-945, R. R. S. 1943, construed therewith.

We conclude the five-ball pinball machine in issue is a game of chance played for money or property, and intended to be prohibited by the law of this state.

The judgment of the district court is reversed and the cause remanded with directions to enter judgment in conformity with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.